**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2088

_____

Phyllis Rose-Maston,                     *
                                         *
            Appellant,                   *
                                         *    Appeal from the United States
      v.                                 *    District Court for the
                                         *    Eastern District of Missouri.
NME Hospitals, Inc., doing business      *
as Lutheran Medical Center,              *
                                         *
            Appellee.                    *

_____

Submitted:  December 12, 1997

Filed:  January 15, 1998

_____

Before BOWMAN, WOLLMAN, and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Phyllis Rose-Maston (Rose-Maston) appeals from the district court's[1]
entry of summary judgment in favor of her former employer, Lutheran
Medical Center (LMC), in her Title VII employment discrimination suit.
Because Rose-Maston failed to present evidence showing that LMC's
legitimate, nondiscriminatory reasons for her termination were a pretext
for unlawful discrimination, we affirm.

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the
Eastern District of Missouri.

Rose-Maston, an African-American female, began working for LMC in October of 1984 as Utilization Review Coordinator. She was promoted in 1991 to the position of Utilization Review Manager. In March of 1992, Glenn Kraft (Kraft), a white male, was hired as LMC's Chief Financial Officer (CFO). As CFO, Kraft directly supervised the performance of seven departmental managers, including Rose-Maston.[2]

Shortly after Kraft was hired, he and Rose-Maston began experiencing difficulties in their working relationship. Rose-Maston was apparently displeased with Kraft's approach, which called for managers under his control to function with minimal guidance and supervision. She felt that this "hands off" approach failed to adequately apprise her of what was expected of her. Kraft, on the other hand, expressed concern about Rose Maston's job performance, believing that she was unable to function competently without constant feedback and supervision. In addition, he believed that she lacked an understanding of the purposes and functions of utilization review, and he found her reports to be inadequate and confusing. Kraft was also concerned about Rose-Maston's somewhat erratic attendance.

In November of 1992, LMC decided to combine its Utilization Review and Social Services departments into a single department. LMC anticipated creating a new Case Management Director (CMD) position to head up the newly created department. Kraft interviewed Rose-Maston and two other individuals for the CMD position. Because LMC's plans to merge the Utilization Review and Social Services departments were not entirely formulated, and because the CMD position was still largely

---

[2]In addition to Rose-Maston, two of the other six managers under Kraft's direct supervision were African-American females. Neither of these individuals experienced any negative employment actions.

undefined, LMC decided not to hire anyone immediately and tabled the proposed position indefinitely.

Following Rose-Maston's interview for the CMD position, her professional relationship with Kraft continued to deteriorate. Although Rose-Maston's previous supervisors had generally given her satisfactory performance evaluations, Kraft's 1992 evaluation of her performance indicated that Kraft was extremely dissatisfied with her sporadic attendance and professional competence. Rose-Maston was absent from work on numerous occasions and was often inexplicably unavailable during ordinary working hours. Kraft's concern about these repeated occurrences led him to begin carefully monitoring her absences. Between August of 1992 and April of 1993, Rose-Maston was absent from work for all or part of the day on seventeen separate occasions.

In January of 1993, Kraft provided Rose-Maston with an action plan outlining specific tasks for her to complete and setting deadlines for the completion of each task. This action plan proved to be largely unsuccessful. Rose-Maston felt that the plan failed to provide her with reasonable guidance, and consequently she failed to complete certain tasks in a timely manner. In April, Kraft informed Rose-Maston that he was unsatisfied with her performance of the tasks identified in the action plan. Kraft and LMC Human Resources Director Jan Kosmal met with Rose-Maston at this time to express their concerns and to inform her that they would carefully monitor her work during the following thirty days and that her employment status would be reevaluated at the end of that time.

On June 7, 1993, Kraft terminated Rose-Maston's employment, citing poor work performance and unacceptable attendance. Shortly thereafter, LMC implemented its

plan to combine the Utilization Review and Social Services departments and hired a white male to serve as the director of the newly created Case Management department.[3]

Following her dismissal, Rose-Maston filed this Title VII action, alleging that LMC unlawfully discriminated against her on the basis of race when it discharged her and when it failed to promote her to the CMD position.

**II.**

We review a grant of summary judgment de novo, applying the same standard as the district court. See Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 562 (8th Cir. 1997). We will affirm if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Herrero v. St. Louis University Hosp., 109 F.3d 481, 483 (8th Cir. 1997); Fed.R.Civ.P. 56(c). Although a party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, a nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial. See Thomas v. Runyon, 108 F.3d 957, 959 (8th Cir. 1997); Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 (8th Cir. 1996).

Rose-Maston's claims of race discrimination are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under this framework, a Title VII plaintiff has the initial burden of establishing a prima facie case of race discrimination. See Hill v. St. Louis University, 123 F.3d 1114, 1119 (8th Cir. 1997). If she is successful in establishing a prima facie

---

[3]LMC contends, and Rose-Maston does not dispute, that the duties and responsibilities of this position had changed considerably since the time of Rose-Maston's November interview.

case, a rebuttable presumption of discrimination arises.  See id.  The burden then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  See id.  Once the employer articulates such a reason, the presumption of discrimination disappears entirely and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus. See id.  At all times, the plaintiff retains the ultimate burden of proving that she was illegally discriminated against on the basis of her race.  See Ruby, 76 F.3d at 912.

## III.

To present a prima facie case of discriminatory discharge, Rose Maston was required to show "that [she] was a member of a protected class, that [she] was qualified for the position, and that despite [her] qualification [she] was displaced from the position."  Ruby, 76 F.3d at 911.  As LMC apparently concedes, Rose-Matson has met these requirements, thus creating a rebuttable presumption of discrimination.  See Hill, 123 F.3d at 1119. LMC rebutted the presumption, however, by articulating legitimate, nondiscriminatory reasons for Rose-Maston's discharge; namely, her irregular attendance and her poor job performance.

Because LMC has produced nondiscriminatory reasons for its actions, the presumption of discrimination created by Rose-Maston's prima facie case disappeared.  See Ryther v. KARE 11, 108 F.3d 832, 837 (8th Cir.), cert. denied, 117 S. Ct. 2510 (1997).  Nonetheless, the elements which form Rose-Maston's prima facie case were not rendered irrelevant by the LMC's production of a nondiscriminatory explanation.  Id.  As we explained in Ryther,

> [t]he *elements* of the prima facie case remain . . . and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff.

This is not to say that, for the plaintiff to succeed, simply proving pretext is necessarily enough. We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of age discrimination. Furthermore . . . the plaintiff must still persuade the jury, from all the facts and circumstances, that the employment decision was based upon intentional discrimination.

Id. at 837-38 (emphasis in original).

The question, then, is whether Rose-Maston produced sufficient evidence to support a reasonable inference that LMC's proffered reason is merely a pretext for race discrimination. See Duffy v. Wolle, 123 F.3d 1026, 1036 (8th Cir. 1997); Moschetti v. Chicago, Central & Pacific R.R. Co., 119 F.3d 707, 710 (8th Cir. 1997). Rose-Maston may prove pretext either directly by showing that her employer was more likely motivated by a discriminatory reason or indirectly by showing that her employer's explanation is unworthy of credence. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 971 (8th Cir. 1994). Proof that LMC's articulated reason is unworthy of credence does not automatically entitle Rose-Maston to judgment but may support an inference of discrimination. See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1334 (8th Cir. 1996). As we went on to explain in Rothmeier,

> [A] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race] was a determinative factor in the adverse employment decision. The second part of the test sometimes may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext "suffice[s] to show intentional discrimination." The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's [race].

Id. at 1336-37 (citations omitted).

Rose-Maston contends that Kraft failed to adequately inform her of her job duties and of his expectations for her. Kraft, however, made it known to Rose-Maston that he expected managers under his supervision to demonstrate high levels of independence and initiative. Although Rose-Maston may have felt that Kraft's approach was inappropriate and that more direction would have been preferable, an employer's failure to inform an employee of what is expected of her is not evidence of discriminatory animus. See Hill, 123 F.3d at 1119. Rose-Maston's claim is nothing more than an attack on the business practices of LMC and Kraft. "[T]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995). See also Day v. Johnson, 119 F.3d 650, 657 (8th Cir. 1997) ("federal courts are not self-appointed personnel managers, and they may not second-guess the fairness or wisdom of an employer's nondiscriminatory employment decisions"). Title VII prohibits intentional discrimination based on certain, discreet classifications; it does not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices. See Hill, 123 F.3d at 1120.

Rose-Maston also alleges that she was treated differently than similarly situated white employees. Specifically, she submits that she was subjected to an evaluation process different from that used with her fellow employees and that certain white employees received promotions for which they were not qualified. These unsubstantiated and conclusory allegations are insufficient to support an inference of pretext. See Davenport v. Riverview Gardens School Dist., 30 F.3d 940, 945 (8th Cir.

1994) ("While evidence supporting this claim [of disparate treatment] would be highly relevant to the issue of pretext, plaintiff presented no such evidence other than his own unsubstantiated allegations").  Rose-Maston points to no specific factual evidence supporting her claim, choosing instead to rely upon bald assertions of favoritism.  Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment.  <u>See</u> <u>Miller v. Citizens Security Group, Inc.</u>, 116 F.3d 343, 346 (8th Cir. 1997); <u>Jackson v. Anchor Packing Co.</u>, 994 F.2d 1295, 1303-04 (8th Cir. 1993).[4]

Finally, Rose-Maston asserts that her prior satisfactory evaluations support an inference of pretext because they cast doubt upon LMC's assertions that she was incompetent.  <u>See</u> <u>Hutson</u>, 63 F.3d at 779 ("demonstration of competence may serve as evidence of pretext when an employee is discharged for incompetence").  Rose-Maston's prior evaluations, however, are not sufficient to defeat LMC's motion for summary judgment.  These evaluations may show that Rose-Maston had performed competently in the past, but they do not render her more recent negative evaluations inherently untrustworthy.  Rose-Maston offers no evidence showing that LMC's proffered explanations for her termination -- poor attendance and failure to complete assigned tasks -- are pretextual.  Indeed, she does not dispute that her attendance was poor or that she failed to complete assigned tasks.

---

[4]Rose-Maston argues that LMC failed to show that other similarly situated employees were treated in the same manner.  This argument, however, misplaces the burden of proof.  As the plaintiff, Rose-Maston bears at all times the ultimate burden of proving that she was illegally discriminated against.  <u>See</u> <u>Ruby</u>, 76 F.3d at 912.  Thus, it was Rose-Maston's burden to produce specific, tangible evidence showing a disparity in the treatment of similarly situated employees.  <u>See</u> <u>Harvey</u>, 38 F.3d at 972; <u>Lanear v. Safeway Grocery</u>, 843 F.2d 298, 301 (8th Cir. 1988).

In sum, because Rose-Maston failed to present any evidence that would support a reasonable inference of pretext, we conclude that the district court properly granted summary judgment against her on her claim of discriminatory discharge.

## IV.

We turn to Rose-Maston's claim that LMC unlawfully failed to promote her because of her race. Once again, we apply the burden-shifting framework of McDonnell Douglas. To establish a prima facie case in a failure-to-promote case, a plaintiff must show: (1) that she was a member of a protected group; (2) that she was qualified and applied for a promotion to an available position; (3) that she was rejected; and (4) that a similarly qualified employee, not part of a protected group, was promoted instead. See Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996); Lidge-Myrtil v. Deere & Co., 49 F.3d 1308, 1310 (8th Cir. 1995).

We recognize that the threshold of proof necessary to make a prima facie case is minimal. See Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995); Johnson v. Arkansas State Police, 10 F.3d 547, 551 (8th Cir. 1993). Nonetheless, we agree with the district court's conclusion that Rose-Maston failed to establish the elements of a prima facie case. She offers no evidence of the qualifications necessary for the CMD position, nor does she offer any evidence regarding her own qualifications. She instead makes conclusory assertions that she was qualified for the position. This is insufficient to establish a prima facie case for discriminatory failure to promote.

Further, even assuming that Rose-Maston has established a prima facie case on her failure-to-promote claim, LMC has met its burden of articulating a legitimate, nondiscriminatory reason for its failure to promote Rose-Maston. Specifically, LMC contends that the person ultimately hired to fill the CMD position was more qualified than Rose-Maston. Rose-Maston offers no evidence that would support an inference

that this reason is pretextual.  In fact, she offers no evidence whatsoever regarding the qualifications of the individual who ultimately obtained the CMD position, and she stated in her deposition that she was entirely unaware of that individual's qualifications.  Thus, the district court properly entered summary judgment in favor of LMC on the failure-to-promote claim.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.