**Lance CHANG, an individual residing in Minnesota, Plaintiff,**

v.

**CARGILL, INC., a Minnesota corporation, Defendant.**

No. CIV.99–1121(DSD/RLE).

United States District Court, D. Minnesota.

March 16, 2001.

David E. Wandling, Esq., Steven Uggen, Esq. and Wandling, Uggen, Rugara & Fowlkes, Minneapolis, MN, for plaintiff.

Janice M. Symchych, Esq., William E. Dornbos, Esq. and Dorsey & Whitney, Daniel P. Rogan, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment. Based on a review of the file, record, and proceedings herein, the court grants defendant's motion.

## BACKGROUND

Plaintiff Lance Chang filed this employment discrimination case against his former employer, Cargill, Inc., alleging primarily that he was fired because of his race. Chang was hired by Cargill in June 1998 after responding to a Cargill advertisement for a natural gas trader. During his interview, Chang indicated he wanted to move from his current occupation as a natural gas buyer into a position as a natural gas trader. His interviewers at Cargill recognized that he had no direct experience in trading natural gas, but they valued his industry contacts and hoped that with training, he could acquire the skills to become a successful trader.

On May 8, 1998, Cargill sent a letter to Chang offering him the position of "Trader–Natural Gas" for an annual base salary of $85,000. The letter did not state that Chang's position would be anything other than terminable-at-will and Mary Rayner, Cargill's Human Resources Manager, confirmed in a later phone conversation with Chang that Cargill does not offer employment contracts. (Chang dep. 64, 68–69.)

Chang reported to work on June 22, 1998. He joined a team of traders working at one trading desk, buying and selling natural gas. The desk had not been profitable for Cargill and in July 1998, Alastair Riach was brought in as the new manager of the natural gas trading desk with instructions to develop the desk into a revenue generator.

Traders operate in a fast-paced environment which requires not only knowledge of the market, but also strong analytical, mathematical and communication skills. Riach quickly became concerned about Chang's ability in these critical areas. In an email to Chang summarizing his first performance review on September 21, 1998, Riach noted that Chang "struggle[d] to convey info in a usable format," and was "too insular." Riach suggested Chang become "more proactive in identifying revenue opportunities and risk," improve his awareness of the activities of the entire trading desk and better develop his contacts so that they could be converted to revenue. (Rayner Aff. Ex. G.) In a December 2, 1998 review, Riach noted that Chang continued to fall below expectations in several key areas and needed to timely complete assignments and "get results". (*Id.* at Ex. H, I.)

Riach was critical of the performances of most of Chang's coworkers at the trading desk, however Chang complains that Riach openly expressed his frustrations with Chang in front of his fellow traders, calling him "stupid," a "fucking idiot," an "asshole," and a "moron." One trader indicated that Riach once mocked Chang when Chang was out of the room by squinting his eyes and face in an effort to appear Asian, then making various comments in an Asian dialect about Chang's abilities. (Gajewski Aff. ¶ 7.) However, another trader testified that he had never witnessed Riach refer to Chang or anyone else in a racially derogatory manner. (Grizzell dep. p. 52.)

In Chang's final performance review in late March 1999, Riach told Chang that he was not meeting his objectives and was not generating enough revenue, especially compared to his fellow traders on the desk. (Chang dep. pp. 160, 178–79; Riach dep. pp. 98–99.) Riach believed that Chang did not understand basic trading concepts or how to manage risk. Riach also determined that Chang struggled to effectively communicate his ideas regarding structured trades and did not function as a member of the trading desk team. The core of Riach's complaint was Chang's weak analytical and mathematical skills. Riach had witnessed Chang make basic math errors and concluded that Chang lacked the ability to consistently and accu-

rately perform fundamental quantitative tasks in the fast-paced trading environment.

Chang admitted to Riach that he had failed to meet a number of objectives. (Rayner Aff. Ex. I.) In a post-review conversation with Kathy Gerken, the contracts administrator for the natural gas trading desk, Chang confided that he thought he might be facing termination. (Gerken Aff. ¶ 2.) Gerken was aware that Chang had the fewest number of trades of any of the natural gas traders.

On March 23, 1999, Riach met with Kari Lininger, a Cargill human resources specialist, to discuss terminating Chang. On March 30, 1999, Riach forwarded to Lininger a summary of Chang's performance in which he outlined Chang's deficiencies. (Lininger Aff. Ex. C.) On March 31, 1999, Lininger began the process of requesting a check to reimburse Chang for his moving expenses. (*Id.* Ex. D.) However, before Chang could be terminated, he took off a week and a half due to the death of his mother.

When Chang returned to work, he requested a meeting with Mary Rayner, the Human Resources Manager in the Energy Department, to discuss the management of the natural gas trading desk. The meeting was held on April 14, 1999, with Rayner, Lininger and Chang in attendance. Chang's sole complaint was about Riach's brusque management style, which Rayner suggested might be due to fact that Riach is British. Rayner broached the subject of Chang's performance, but Chang responded that he was there to talk about the way Riach was treating him, not about his performance. Chang did not raise the issue of racial discrimination or give any other indication that he thought his race was a factor in Riach's conduct towards him. (Chang dep. pp. 211–15; Rayner Aff. ¶¶ 11–12.)

Chang agreed to have a follow up meeting with Riach and Lininger to further discuss the issue. The meeting occurred approximately two weeks later, after Riach returned from paternity leave. At this meeting, Riach apologized to Chang, indicating that none of his comments were personal and that his abrupt behavior was due to the fast-paced nature of the trading desk. (Chang dep. pp. 216–17; Riach dep. pp. 145–47.)

On April 28, 1999, after resolving Chang's complaint about Riach's management style, Cargill terminated Chang's employment. Chang alleges that he was fired because of his race and in retaliation for complaining about racial discrimination. He also claims that Cargill defamed him and breached its contractual agreement with him and that he relied on Cargill's promise of training to his detriment. Cargill now moves for summary judgment on all claims.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 250, 106 S.Ct. 2505.

On a motion for summary judgment, the court views the evidence in a light most favorable to the nonmoving party, giving

that party the benefit of all reasonable inferences without assessing credibility. *See Miller v. National Cas. Co.*, 61 F.3d 627, 628 (8th Cir.1995). The Eighth Circuit has counseled that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *See id.* at 322–23, 106 S.Ct. 2548. With this standard at hand, the court considers Cargill's motion for summary judgment.

## I. Race Discrimination

■ Chang's racial discrimination claim is analyzed under the framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff must first present a prima facie case of racial discrimination: that he was a member of a protected class, that he was qualified for the position and that despite his qualification he was displaced from the position. *See Rose–Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1108 (8th Cir. 1998). If he meets his prima facie burden, a rebuttable presumption of discrimination arises. *See id.* at 1107. However, the defendant may rebut plaintiff's prima facie case by demonstrating a legitimate, non-discriminatory reason for adverse action against the plaintiff. *See id.* Once the defendant articulates such a reason, the presumption of discrimination disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus. *See id.*

■ In this case, Chang's claim fails at the prima facie stage because Chang has not established that he was qualified for the position of trader. Riach observed that Chang struggled with the basic math, analytical and communication skills necessary to succeed as a trader. (Riach dep. pp. 21–23, 37–38, 130–135.) In September 1998, Riach attempted to put Chang on track by establishing a set of performance objectives for him, (Rayner Aff. ¶¶ 7–8, Ex. G, H), but Chang continued to perform below expectations. Chang admitted that he was "weak in trading skills," and in particular that he committed fundamental math and analytical mistakes. (Chang dep. pp. 120–22; 149–50.) For example, he admits that he performed untimely calculations that lost Cargill a profitable trade, (*id.* at p. 123), and lost another trade because he had not obtained a contract with the customer, (*id.* at pp. 166–67). Fellow traders also observed that Chang was struggling on the desk. (Grizzell dep. pp. 24–32). Riach conveyed his continuing concerns to Chang in his December 1998 and March 1999 performance reviews (Lininger Aff. Ex. A, C) but by late March, 1999, Riach concluded that Chang must be terminated.

■ Chang attempts to rebut this record by pointing to his successful employment as a natural gas buyer for three previous employers. Prior evaluations, especially those from different employers regarding different job titles and different responsibilities, have no bearing on Riach's assessment of Chang's deficiencies as a trader for Cargill. *Cf. Rose–Maston*, 133 F.3d at 1109 (noting that prior positive evaluations from the same employer may show that plaintiff performed competently in the past but do not render recent negative evaluations untrustworthy). Similarly, the assertions by one of Chang's former coworkers at Cargill that Chang had the skills to become a successful trader, (Ga-

jewski Aff. ¶ 3), cannot rebut the overwhelming evidence against Chang on this point. On the record before the court, no reasonable jury would conclude that Chang was qualified to work as a trader. *See Richmond v. Board of Regents*, 957 F.2d 595, 598 (8th Cir.1992) (affirming trial court's conclusion that plaintiff had not met her prima facie burden where defendants produced abundant documentation, covering approximately eighteen months, that plaintiff's performance was unsatisfactory, that plaintiff ignored progressive warnings and discipline and that plaintiff's performance did not improve).

 Even if Chang had established that he was qualified for the trader position, he has failed to present sufficient evidence to support a reasonable inference of discriminatory animus or pretext. Chang emphasizes the fact that Riach complained about poor performance from his Caucasian coworkers, but only fired Chang. However, in light of the gap between Chang's performance and the performance of his coworkers, it is unsurprising that Chang was the first trader to be terminated.[1] The court further notes that only one of Chang's coworkers on the desk survives to this day—two other traders "saw the writing on the wall" and quit the trading desk within nine months of Chang's departure. (Rayner dep. pp. 100–03.)

Although the anecdotal report of Riach's alleged mocking behavior is probative of discriminatory animus, (Gajewski Aff. ¶ 7), the court finds this conduct to be akin to "stray remarks" which in this circuit does not establish pretext. *See Montgomery v. John Deere & Co.*, 169 F.3d 556, 560–62 (8th Cir.1999) (holding that frequent references to plaintiff as "old fart" by supervisor and coworkers standing alone did not create jury question regarding age discrimination issue when plaintiff's prima facie case was weak and there was no other evidence of pretext); *Ruby v. Springfield R–12 Public Sch. Dist.*, 76 F.3d 909, 912 (8th Cir.1996) (concluding that alleged discriminatory comments by supervisors calling employee "boy," stating that African Americans commit more crimes than whites, and joking that plaintiff looked like he was dressed for a karate match were not sufficient to rebut employer's reason to terminating plaintiff for harassing a coworker and falsifying mileage records.)

 Based on Chang's failure to meet his prima facie burden or establish that Cargill's asserted reason for terminating him was pretextual, the court grants summary judgment as to the discrimination claim.[2]

## II. Retaliation

 Chang also claims that he was terminated in retaliation for voicing his objection to Riach's discriminatory conduct. To prevail on a retaliation claim, Chang must establish that he engaged in protected activity, he suffered an adverse employment action and there was a causal connection between his protected activity and the adverse action. *See Cross v.*

---

1. Gerken calculated that from June 1, 1998 to April 30, 1999, Chang completed only 177 trades, while his nearest counterpart, Martin Gajewski, completed 872 trades. (Gerken Aff. ¶ 3.)

2. During the course of discovery, Cargill discovered that Chang falsified his employment application by lying about his college major, his cumulative grade point average, and his college grades in math and computer programming classes. (Chang dep. pp. 248–58; Dornbos Aff. Ex. H.) This after-acquired evidence of application fraud provides an additional basis for Chang's termination and limits his capacity to recover damages to the pay he would have received from his termination date to the discovery of this falsification. *See McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

*Cleaver,* 142 F.3d 1059, 1071 (8th Cir.1998). Like the substantive discrimination claim, the court applies the *McDonnell Douglas* analytical framework to a retaliation claim under § 1981. Once a prima facie showing of retaliation is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Barge v. Anheuser–Busch, Inc.,* 87 F.3d 256, 259 (8th Cir.1996) (§ 1981 retaliation claim). If the employer meets that burden, the presumption of retaliation disappears and plaintiff must establish that the proffered reason for termination was a pretext for illegal retaliation. *See id.* Here, Chang cannot satisfy his prima facie burden, nor can he establish that Cargill's articulated reason for firing him was pretextual.

▌The undisputed evidence establishes that Chang made no complaints about racial discrimination to anyone at Cargill (Chang dep. pp. 212–13; Rayner dep. pp. 64–67; Lininger dep. pp. 39, 43–44; Rayner Aff. ¶¶ 11–12.) Specifically, when asked about his April 1999 meeting with Rayner and Lininger, Chang testified:

Q: Isn't it true that you did not complain about racial discrimination during this meeting?

A: That's true.

. . . .

Q: If you thought this was race based, why didn't you tell them directly that that's what you thought?

A: It's not my job to figure out whether or not this is race. This is how I felt.

(Chang dep. pp. 211–12.) Based on Chang's own admissions, no reasonable jury would conclude that Chang engaged in any statutorily protected activity. *See Harris v. Secretary, U.S. Dep't of the Army,* 119 F.3d 1313, 1318 (8th Cir.1997) (standard met if plaintiff "complained of discrimination").

▌Likewise, Chang has failed to adduce evidence to support an inference that his complaint about Riach's management style was causally connected to his termination. The record clearly indicates that Riach had decided to terminate Chang in late March, 1999, at least two weeks before Chang met with Lininger and Rayner. (Riach dep. pp. 113–14, 119–20.) On March 30, 1999, Riach forwarded to Lininger a summary of Chang's performance in which he outlined Chang's deficiencies. (Lininger Aff. Ex. C.) On March 31, 1999, Lininger began the process of requesting a check to reimburse Chang for his moving expenses. The only reason his termination was delayed was because Chang took an unexpected leave to attend his mother's funeral. (Lininger Aff. ¶ 4; Lininger dep. p. 36.) These undisputed facts establish that Chang could not have been terminated in retaliation for engaging in protected activity. Finally, as analyzed above, Chang lacks sufficient evidence upon which a reasonable juror could conclude that Cargill's stated reason for terminating Chang was pretextual. Accordingly, summary judgment is granted as to Chang's retaliation claim.[3]

---

**3.** Cargill contends that although Chang appears to allege race discrimination and retaliation under both Title VII and Section 1981, the Title VII claims are barred because Chang failed to file a charge with the EEOC or state agency within 300 days of his notice of termination. *See* 42 U.S.C. § 2000e–5(e); *see also Shannon v. Ford Motor Co.,* 72 F.3d 678, 684–86 (8th Cir.1996). Chang offers no rebuttal.

The court has reviewed plaintiff's complaint and it appears that the reprisal claim is made pursuant to Title VII alone. Regardless, Title VII and Section 1981 employment claims are subject to the same analysis, therefore dismissal on either basis resolves the claims in their entirety. *See Kim v. Nash Finch,* 123 F.3d 1046, 1056 (8th Cir.1997).

## III. Defamation

██ Chang also claims that Riach's comments about him were defamatory. "For a statement to be defamatory, it must be false, it must be communicated to another, and it must tend to harm the plaintiff's reputation." *Bol v. Cole*, 561 N.W.2d 143, 146 (Minn.1997). *See also Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). Chang challenges Riach's statements that Chang was "stupid," an "asshole" and a "fucking idiot," and also that Chang could not add. These alleged comments are not actionable because they are either opinion statements or are true in the context in which they were uttered.

██ It is well-recognized in Minnesota that the First Amendment absolutely protects opinion that lacks "a provably false statement of fact." *Hunter v. Hartman*, 545 N.W.2d 699, 706 (Minn.Ct.App. 1996). To distinguish between protected opinions and actionable assertions of fact, Minnesota courts evaluate the four factors developed in *Janklow v. Newsweek, Inc.*, 788 F.2d 1300 (8th Cir.1986), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986):(1) the statement's precision and specificity, (2) the statement's verifiability, (3) the social and literary context in which the statement is made and (4) the statement's public context. *Janklow*, 788 F.2d at 1302–03. *See also Geraci v. Eckankar*, 526 N.W.2d 391, 397 (Minn.Ct.App.1995), *rev. denied*, March 14, 1995, *cert. denied*, 516 U.S. 818, 116 S.Ct. 75, 133 L.Ed.2d 34 (1995). These factors are "considered together" and "the decision whether a statement is fact or opinion must be based on all the circumstances involved." *Janklow*, 788 F.2d at 1302.

██ The majority of the challenged comments, namely the profanity and the "stupid" and "idiot" comments, appear to the court to be nothing more than Riach's expressions of frustration over Chang's trading errors. Riach testified that in the middle of a fast-paced trade, he could not take Chang aside to quietly discuss his costly mistakes, (Riach dep. p. 131), and as one of Chang's fellow traders confirmed, profanity was commonplace in the trading business, especially "in the heat of the moment" of a failed trade or missed opportunity, (Grizzell dep. p. 51). Riach's name calling commentary is of this genre, neither specific nor verifiable, and because the statements cannot be proven true or false, they are not actionable. *Geraci*, 526 N.W.2d at 398. *See also Secrist v. Harkin*, 874 F.2d 1244, 1250 (8th Cir.1989), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989) ("Statements which are 'loosely definable' or 'variously interpretable' cannot in most contexts support an action for defamation.")

██ The one specific comment allegedly made by Riach that Chang cannot add also fails to be defamatory because it is a truthful assessment of Chang's performance on the desk. Riach noted ongoing concerns with Chang's "ability to do maths." (Riach dep. pp. 130–131.) In one incident, Chang presented a trade to Riach for approval and Riach found that Chang had incorrectly calculated the number of months when calculating the interest on the trade. (Riach dep. pp. 21–24.) Riach's comment about Chang's inability to add appears to have been made in the course of this incident, which Chang clearly admitted to, (Chang dep. pp. 112, 120–122), therefore Chang cannot now claim that Riach's statement is false and defamatory. "True statements, however disparaging, are not actionable" under Minnesota law. *Stuempges*, 297 N.W.2d at 255. Even if only the "gist or sting" of a statement is true, it is not actionable. *Oaks Gallery & Country Store–Winona, Inc. v. Lee Enters.*, 613 N.W.2d 800, 803 (Minn. Ct.App.2000). For these reasons, sum-

mary judgment as to plaintiff's defamation claim is granted.

## IV. Contract Claims

 Chang alleges that Cargill breached its employment contract with him, however Chang has provided no evidence that any such written or oral employment contract existed. Likewise, Chang has provided no evidence that Cargill made any kind of definitive promise that would support a claim of promissory estoppel. Chang's offer letter contains no terms which could be construed as a modification of the at-will employment relationship. *See Fox v. T–H Continental L.P.*, 78 F.3d 409, 413–14 (8th Cir.1996). Similarly, the generalized assertions allegedly made by Cargill representatives at Chang's interview that Chang would have ample opportunities to develop his trading skills does not constitute a clear and definite promise by which Cargill was obliged to enroll Chang in an undefined training program. *See id.; see also Corum v. Farm Credit Servs.*, 628 F.Supp. 707, 713 (D.Minn.1986) ("Every utterance of an employer does not constitute an offer.") Moreover, at his deposition, Chang admitted that Rayner specifically advised him that Cargill does not enter into employment contracts. (Chang dep. p. 68.) Finally, to the extent that Chang relies on his employee handbook to support his claims, the court notes that Cargill's employee handbook contains an explicit at-will disclaimer.[4] Therefore, based on this failure of proof, the court must dismiss Chang's breach of contract and promissory estoppel claims.

4. Chang testified at his deposition that based on the explicit disclaimer contained in the employment handbook, the handbook does not establish a contractual relationship. (Chang dep. p. 68.) However, in his brief, he asserts that the handbook specifically promises him the opportunity to improve his performance prior to termination. Notwithstanding that he was given such opportunity, the court also notes that Chang testified that he never even read the handbook. (*Id.*) These factors also preclude Chang's claims.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment is granted.

2. Plaintiff's complaint is dismissed with prejudice.

3. Plaintiff shall pay all recoverable costs to defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**