# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-2140

———————

| | | |
|---|---|---|
| Michael Williams, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court, Western District |
| Saint Luke's - Shawnee | * | of Missouri. |
| Mission Health System, Inc., | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: December 10, 2001

Filed: January 18, 2002

———————

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Michael Williams appeals the decision of the district court[1] granting summary judgment against him in his Title VII case. We affirm.

———————

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

I.

Mr. Williams was hired by Crittenton Behavioral Health, a member of the Saint Luke's - Shawnee Mission Health Systems, Inc., as a "behavioral health technician" (BHT) and assigned to work with troubled adolescent girls. These girls were involuntarily committed to Crittenton, in most cases because of "sexual issues," including sexual abuse and promiscuity. Two years after Mr. Williams began work, a patient alleged, among other things, that the plaintiff had made sexually suggestive comments to her, had asked her inappropriate personal questions, and had hit her hard while roughhousing. Another patient alleged that Mr. Williams rubbed against her from behind and whispered suggestively in her ear. Crittenton began an internal investigation and reported the matter to state officials.

During the internal investigation, Crittenton officials were told that Mr. Williams gave his phone number to a patient's mother and insinuated that he wished to have a relationship with her, that he received manicures and head rubs from patients, and that he frequently engaged in horseplay with patients. Such activities, including contact with patients' families, are prohibited by company policy, and the company informs employees that they may be fired if they engage in them. Mr. Williams denied some of the allegations, but admitted engaging in horseplay and providing his phone number to another family member (not the mother) of the patient. When Crittenton terminated his employment, Mr. Williams, who is black, brought this action claiming that he was fired because of his race in violation of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e through § 2000e-17. The district court granted Crittenton's motion for summary judgment.

II.

We review a decision granting a motion for summary judgment de novo. *See Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

-2-

there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c).

To survive summary judgment in a discriminatory discharge case such as this, where the plaintiff lacks direct evidence of discrimination, he or she must first establish a prima facie case by offering proof that he or she is a member of a protected class, was qualified for the position, and was terminated despite being qualified. *See Rose-Maston*, 133 F.3d at 1108. Once the plaintiff makes out a prima facie case, the burden of production shifts to the defendant, who must provide proof of a " 'legitimate, nondiscriminatory reason' " for the termination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000), (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the case reaches that stage, the plaintiff then assumes the burden of producing evidence that the proffered reason was merely a pretext for discrimination. *See Reeves,* 530 U.S. at 143-44; *Rose-Maston*, 133 F.3d at 1107.

We conclude, as the district court did, that Mr. Williams established a prima facie case because he is a member of a protected group and was fired from a position that he apparently was qualified to hold. The district court further determined, and we agree, that Crittenton offered a legitimate, non-discriminatory reason for Mr. William's termination, namely, that Mr. Williams violated company policy. The only remaining question, then, is whether Mr. Williams produced evidence that could lead a reasonable jury to believe that his termination was not really due to the violations of company policy, as Crittenton asserts, but was instead due to racial animus. Since this is a motion for summary judgment, all the evidence must of course be construed in the light most favorable to Mr. Williams. *See Prosser v. Ross*, 70 F.3d 1005, 1009 (8th Cir. 1995).

As evidence of racial animus, Mr. Williams suggests that he was treated more harshly than two white employees who committed similar infractions, and that a

reasonable jury could infer that that differential treatment was due to his race. Both of the instances that he points to, however, are unavailing to him. In one of them, a white BHT was accused by a single patient of "inappropriate conduct," but the BHT was later exonerated. He admitted that he was in a patient's room with the door closed, in violation of Crittenton policy, but said the door closed by itself. He was moved to a position in which he did not have direct contact with patients and, after internal and state investigations were completed, he was offered the choice to return to his former position. The other white Crittenton employee to whom Mr. Williams wishes to be compared was the subject of complaints from female co-workers regarding sexual harassment. He was referred to Crittenton's employee assistance program for counseling, but was not disciplined.

We believe that the cases identified by Mr. Williams vary from his own sufficiently to make them legally distinguishable. In the first incident, the employee, unlike Mr. Williams, did not admit any inappropriate behavior and ultimately was cleared of the single accusation against him; in the other incident, the relevant employee, at most, acted inappropriately toward adult co-workers, but not toward minor patients under his care. Neither employee was found to have had improper physical contact with minor patients or inappropriate conversations with any patients, nor did either give his phone number to a patient or family member.

While instances of disparate treatment may support an inference of pretext, Mr. Williams had the burden of proving that he and the white employees to whom he is comparing his situation "were similarly situated in all relevant respects," *Ricks v. Riverwood Int'l Corp.*, 38 F.3d 1016, 1019 (8th Cir. 1994), including showing that the other employees' offenses were the same or of " 'comparable seriousness.' " *Scroggins v. University of Minnesota*, 221 F.3d 1042, 1044 (8th Cir. 2000) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). Even when we construe the evidence in the light most favorable to Mr. Williams, as we must, we are left with the unavoidable conclusion that the offenses of those other employees were

not of comparable seriousness to the ones that Mr. Williams was accused of committing. It is also significant that the number of accusations against Mr. Williams was greater than the number made against those other employees.

Since neither of the two men was similarly situated in all relevant respects to Mr. Williams, Mr. Williams has failed in his effort to show that the proffered reason for his termination was pretextual. We hold therefore that no reasonable jury could, on the basis of the record before the district court, infer that Mr. Williams was fired because of his race.

### III.

For the foregoing reasons, we affirm the order of the district court granting summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.