# United States Court of Appeals
## For the Eighth Circuit
No. 20-2760

Millard Gutter Company, a Corporation, doing business as Millard Roofing & Gutter

*Plaintiff - Appellant*

v.

Continental Casualty Company, also known as CNA, doing business as Continental Insurance; National Fire Insurance Company of Hartford

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 18, 2021
Filed: August 16, 2021
[Published]

_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Millard Gutter Company sued Continental Casualty Company and National Fire Insurance Company of Hartford, alleging that they breached insurance policies

issued to third parties. The district court[1] granted summary judgment in favor of the defendants, and Millard Gutter now appeals.

Millard Gutter is a roofing contractor based in Omaha, Nebraska. Two third parties, Midwest Screw Products and Dr. David Schroeder, separately hired Millard Gutter to repair hail storm damage to their buildings. They both signed agreements authorizing Millard Gutter to coordinate with their respective insurance companies concerning reimbursement for repairs authorized under the applicable insurance policies. Midwest Screw was insured by National Fire, and Dr. Schroeder's practice by Continental Casualty.

The record shows that Millard Gutter completed all repairs authorized by the defendants, that the defendants paid all claims Midwest Screw and Dr. Schroeder submitted for the cost of those repairs, and that Midwest Screw and Dr. Schroeder then reimbursed Millard Gutter in full for those repairs.[2] Millard Gutter nonetheless claims that the defendants breached the insurance policies "by failing to pay to Millard [Gutter] all benefits due and owing under the policies." It argues that the defendants too narrowly interpreted the scope of Midwest Screw's and Dr. Schroeder's losses, and that additional repairs (and thus additional payments to Millard Gutter) were warranted under the policies. Because Millard Gutter reads the authorizations to assign Midwest Screw's and Dr. Schroeder's insurance claims to

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

[2]To the extent Millard Gutter continues to argue on appeal that it "was never paid in full for all work actually performed," that assertion is not borne out by the record. The only evidence Millard Gutter offers in support of this claim is a statement to that effect in James Eggers's affidavit, which is too vague and conclusory to create a genuine issue of material fact. See Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment.").

Millard Gutter, it contends Millard Gutter had authority to determine what repairs were warranted. The district court disagreed. It determined that Millard Gutter was assigned only the proceeds of the insurance claims disbursed by the defendants, not the claims themselves, and that it therefore lacked authority to determine the scope of the insureds' losses and necessary repairs.

We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in Millard Gutter's favor. Turner v. XTO Energy, Inc., 989 F.3d 625, 627 (8th Cir. 2021). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up).

As a general matter, an insured may assign its post-loss insurance claim consistent with Nebraska law. See, e.g., Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co., 889 N.W.2d 596, 605 (Neb. 2016) (concluding that "the postloss assignment of a claim under a homeowner's insurance policy was valid even though the policy stated any assignment made without the insurer's consent would be invalid"); Valley Boys, Inc. v. Allstate Ins. Co., 66 F. Supp. 3d 1179, 1881–82 (D. Neb. 2014) (applying Nebraska law and reaching a similar conclusion). But the authorizations in this case, in relevant part, permit Millard Gutter only to "make demand upon any potentially liable insurance company for payment" of the repair costs and "to negotiate approval for payment or reimbursement of expenses associated with any necessary repair work" with the insurers. They also state that Midwest Screw and Dr. Schroeder authorized their insurers to "make payment directly to [Millard Gutter], or to name [Millard Gutter] as joint-payee on any payment."

"Under Nebraska law, a court interpreting a contract, such as an insurance policy, must first determine, as a matter of law, whether the contract is ambiguous." Reisig v. Allstate Ins. Co., 645 N.W.2d 544, 550 (Neb. 2002). If the contract terms are "clear," a court must accord them "their plain and ordinary meaning as the ordinary or reasonable person would understand them." Id. Here, the authorization terms are "clear," id., and no reasonable person would construe them to assign Midwest Screw's and Dr. Schroeder's claims to Millard Gutter or to otherwise grant Millard Gutter the right to determine the scope of damages or loss. Rather, the plain language of the authorizations permits Millard Gutter only to seek payment from the defendants and to negotiate the terms of those payments with the defendants. Accordingly, Millard Gutter lacked authority to determine the scope of the loss or damage sustained by Midwest Screw or Dr. Schroeder. Summary judgment in favor of the defendants was therefore warranted.

We affirm the judgment of the district court.

_____