# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-3263

_____

R.A.D. Services LLC, a Nebraska limited liability company, Assignee; Brokram, Inc., Elite Exteriors, a Nebraska Corporation Assignee, doing business as Elite Exteriors

*Plaintiffs - Appellants*

v.

State Farm Fire & Casualty Company

*Defendant - Appellee*

_____

No. 21-3264

_____

Millard Gutter Company, a Corporation, doing business as Millard Roofing and Gutter

*Plaintiff - Appellant*

v.

State Farm Fire & Casualty Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 16, 2022
Filed: February 10, 2023
[Published]
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

PER CURIAM.

Several homeowners hired contractors to repair damage to their homes. The homeowners assigned to the contractors their rights under their insurance policies with State Farm & Casualty Co. State Farm refused to pay. The contractors sued. State Farm moved for summary judgment, arguing the assignments were invalid under Nebraska law. The district court[1] granted the motion. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

In 2013, a storm damaged 13 homes insured by State Farm. To repair the damage, the homeowners hired Millard Gutter Co. About three years later, seven other policyholders hired Brokram, Inc. (doing business as Elite Exteriors) to repair their homes. State Farm's policy provides two payments: (1) "until actual repair or replacement is completed, [State Farm] will pay only the actual cash value at the time of the loss of the damaged part of the property. . ." and (2) "when the repair or replacement is actually completed [State Farm] will pay the covered additional amount [the policyholder] actually and necessarily spend[s] to repair or replace the damaged part of the property . . . ." Before any repairs, State Farm made the category (1) payments for the actual cash value at the time of the loss.

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

Each homeowner assigned to their contractor their rights to payment under the insurance policy and to pursue a claim against State Farm. Elite then assigned its rights to R.A.D. Services, LLC. After the repairs, the contractors sought payment from State Farm. State Farm refused. R.A.D. and Millard separately sued State Farm for breach of contract. Elite joined R.A.D.'s claim, asserting its own breach-of-contract claim.

Millard's assignment form stated, in part:

> In partial consideration for the services rendered by Millard Roofing Company (hereinafter "Contractor"), [homeowner] agrees to assign to Contractor any benefit, claim and/or the right to proceeds from a claim against any insurance policy that may be available to provide payment or reimbursement of expenses associated with services rendered by Contractor on the property located at [homeowner's address] . . . In lieu of direct payment and as inducement to contractor to proceed forward to recover reasonable charges, [the homeowner] agree to execute the Assignment so that the Contractor may seek payment directly from any potentially liable insurance company, including State Farm.

Elite's assignment form stated:

> For value received, the Assignor hereby sells and transfers to the Assignee and its successors, assigns and personal representatives, any and all claims, demands, and cause or causes of action of any kind whatsoever which the undersigned has or may have against State Farm, arising from the following claim [homeowner's claim number].

The district court granted summary judgment to State Farm based on the summary judgment record. The contractors appeal.

## II.

Millard claims that State Farm acted in bad faith by refusing to pay for the repairs. In Nebraska, an assignee does not have standing to assert a first-party bad faith claim against the insurer based on a breach of an insurance policy. *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 980 N.W.2d 420, 434 (Neb. 2022); *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*, 980 N.W.2d 437, 447-48 (Neb. 2022). Millard lacks standing to assert a bad faith claim against State Farm. The district court properly entered summary judgment on this claim.

## III.

Each of the 13 homeowners executed an "Authorization" form, giving Millard the right "to proceed with the insurance repair work [as] listed" on the form. The form included a series of check boxes to indicate the "materials damaged" on the house: roofing, gutters, windows, doors, garage doors, siding, or paint. It also authorized Millard to seek payment from the insurance company and negotiate the terms of those payments. Millard argues that the Authorization forms assigned it the right to enforce the insurance policy.

This Authorization form is insufficient to assign a right to pursue a claim against an insurer based on an insurance policy. *Millard Gutter v. Continental Cas. Co.*, 9 F.4th 711, 713 (8th Cir. 2021). Analyzing the same Authorization form as present here, this court there held it was "clear" that the form did not assign the right to pursue a post-loss insurance claim. *Id.*

## IV.

When the contractors filed their opposition to summary judgment, they did not attach their exhibits. After the contractors eventually filed all their exhibits—two days after State Farm filed its reply brief—the district court struck them, ruling that the contractors' failure to meet deadlines was "inexcusable." The district court

concluded State Farm was prejudiced by having to respond without reviewing the contractors' exhibits. The district court also noted that it would have stricken the evidence on its own as a clear violation of Local Rule 7.1(b)(2)(A).

The untimely filing of the contractors' exhibits—almost one month after their opposition brief—violated the district court's local rules. The party opposing summary judgment must file and serve its brief within 21 days after the service of the motion and supporting brief. NECivR 7.1(b)(1)(B). "When filing the opposing brief, the opposing party must also file and serve supporting evidentiary material not previously filed." NECivR 7.1(b)(2)(A). "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1). This court reviews "for abuse of discretion the district court's application of its local rules." *Libel v. Adventure Lands of America, Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007).

"The district court has considerable discretion in applying its local rules." *Buffets, Inc. v. Leischow*, 732 F.3d 889, 895 (8th Cir. 2013). The district court here did not abuse its discretion by striking the exhibits filed in violation of the local rules. *See, e.g.*, *id.* (determining the district court did not abuse its discretion by rejecting evidence not timely filed under the local rules).[2] Without the contractors' exhibits, the district court properly accepted State Farm's facts as admitted, in accordance with local rules. *See generally Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426 (8th Cir. 1997) ("A local rule of a district court has the force of law . . . and the parties are charged with knowledge of [those] rules . . . .").

---

[2]The contractors claim the district court erred in ruling on the motion to strike within three days, before their 14-day response period expired. *See* NECivR 7.1(b)(1)(B) ("A brief opposing any other motion must be filed and served within 14 days after the motion and supporting brief are filed and served."). This objection was not raised in the district court. "Absent exceptional circumstances," not present here, "we cannot consider issues not raised in the district court." *Shanklin v. Fitzgerald*, 397 F.3d 596, 601 (8th Cir. 2005).

## V.

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, *quoting First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288 (1968).

Essential to the contractors' arguments is that they actually reached an agreement with the insured homeowners—namely, they agreed to "repair" any "storm damage" found at each homeowner's property (i.e., the scope of work) in exchange for a payment equaling the homeowner's insurance deductible, *plus* an assignment of the homeowner's insurance claim (i.e., the price). The contractors maintain they "agreed to make" the repairs "irrespective of whether or not State Farm" approved them.

The contractors mostly rely on *Millard Gutter Co. v. Farm Bureau Property & Casualty Insurance Co.*, 889 N.W.2d 596 (Neb. 2016). However, that decision addressed a different issue. The *Farm Bureau* case determined whether an assignment was valid when a homeowner assigned his rights under an insurance policy that prohibited an assignment unless the insurer consented. *Farm Bureau Prop. & Cas. Ins.*, 889 N.W.2d at 599. The court concluded that absent a statute to the contrary, a post-loss assignment of a claim under a homeowner's policy was valid, "even though the policy stated any assignment made without the insurer's consent would be invalid." *Id.* at 605. The *Farm Bureau* decision addressed only the validity of a policy's prohibition on assignments, not whether the language of the assignment was sufficient enough to be binding.

-6-

"An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to the rules of contract construction." *Valley Boys v. American Family Insurance Co.*, 947 N.W.2d 856, 865 (Neb. 2020). "[I]n order to be binding, an agreement must be definite and certain as to the terms and requirements." *Id.* at 867. "An agreement which depends upon the wish, will, or pleasure of one of the parties is illusory and does not constitute an enforceable promise." *Id.* An assignment of rights to proceeds under an insurance policy must contain a definite agreement about the price and scope of work to be completed. *Id.* at 868.

A.

The parties do not dispute the written terms of the assignments to Millard and Elite. They disagree whether these terms are sufficient to create a valid assignment of rights. The Nebraska Supreme Court explained the language required for an enforceable assignment in *Valley Boys v. American Family Insurance Co.*, 947 N.W.2d 856 (Neb. 2020). In *Valley Boys*, homeowners hired Valley Boys, Inc. to repair their roof. *Id.* at 861. In exchange, they executed an assignment transferring their right to pursue a claim under the insurance policy to Valley Boys. *Id.* at 862. At the time of the assignment, eight of the nine homeowners also signed a "Customer Service Agreement" (CSA) stating:

> Due to the unique nature of repairs related to insurance claims, this contract *may not include an explicit price because the final scope of repairs and/or replacement arising from the Claim has not yet been agreed upon* with the insurer . . . Valley Boys agrees to use customary industry pricing for the work . . . Valley Boys' performance under this agreement *is contingent upon Valley Boys reaching agreement* with the insurance company on the scope of repairs and/or replacement.

*Id.* (emphasis added).

In *Valley Boys*, the Nebraska Supreme Court ruled that the assignments were invalid because the contractor's obligation to perform work was expressly "conditioned upon" the homeowners' insurance company approving the precise scope of the repairs. *Id.* at 868-69. The contractor never reached an agreement with the homeowner, meaning in turn that it never "reach[ed] an agreement with the homeowners regarding the scope of work" to be completed. *Id.* Without an agreed-upon scope of work, no agreement on a price "ever came to fruition" either. *Id.* at 869. Because the scope and price of the repair work to be performed were left to be determined in the future, the assignments between the contractor and the homeowners were, according to the Nebraska Supreme Court, too indefinite to be enforceable as a matter of law. *See id.*

The language in Millard's and Elite's written assignments, standing alone, is too indefinite to create a valid assignment. Millard's assignment described the scope of work "for the services rendered" while Elite's simply lists "for value received." The price terms are also too indefinite. Millard's Assignment form describes the price as "reasonable charges" and Elite's assignment form does not have a price term. The contractors try to distinguish their assignments from *Valley Boys*, emphasizing that the performance terms there were even more indefinite, giving Valley Boys the right to decide whether to perform work. But the *Valley Boys* opinion held that the assignment there left the scope of work "to be determined in the future" and thus "no binding agreement had been reached." *Id.* at 868. Equally here, without a description of the services to be provided and a definite price, these terms are left "to be determined in the future," and thus there is no mutuality of obligation.

B.

Although the written language is insufficient to create an enforceable assignment, this conclusion, by itself, does not resolve this case. The contractors

argue that their oral arrangements cure any deficiencies that may exist in the written agreements.

In Nebraska, the terms of a contract can be "supplied by parol evidence" if a written instrument is too indefinite to be binding. *Aurora Tech., Inc. v. Labedz*, 964 N.W.2d 474, 479 (Neb. Ct. App. 2021); *see Neb. Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472, 500–01 (Neb. 2001) (observing that contracting parties can "cure" an indefinite contract "by later verbal clarification"), *abrogated in part on other grounds by Kremer v. Rural Cmty. Ins. Co.*, 788 N.W.2d 538 (Neb. 2010).

Here, the contractors contend that they made additional oral arrangements with homeowners about the repairs to be performed and the estimated price, which "spell[ed] out the essential commitments" made by the contracting parties more definitively. *Acklie v. Greater Omaha Packing Co.*, 944 N.W.2d 297, 306 (Neb. 2020); *see MBH, Inc. v. John Otte Oil & Propane, Inc.*, 727 N.W.2d 238, 249 (Neb. Ct. App. 2007) ("[A]n unenforceable agreement to agree may become enforceable when the missing term is subsequently supplied by the parties."); *see also Aurora Tech.*, 964 N.W.2d at 480 (recognizing that contracts can be "partly oral and partly written").

Under Nebraska law, as to the precise scope of the repair work to be performed by the contractors, a contract can be sufficiently definite "so long as the parties can tell when it has been performed" and "there is in existence some standard by which performance can be tested." *Neb. Nutrients*, 626 N.W.2d at 499 (quoting *Davco Realty Co. v. Picnic Foods, Inc.*, 252 N.W.2d 142, 146 (Neb. 1977)). A court can sometimes "ascertain the meaning" of a contract "by referring to the parties' course of dealing with each other" or even a "general reasonableness standard." *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 740 (Neb. 2011); *see MBH, Inc.*, 727 N.W.2d at 249 (concluding that indefinite contract terms "became defined by the parties' subsequent actions that indicated their interpretation of the terms").

This court cannot conclude that the assignments here are invalid as a matter of law simply because the written "vital terms" were not as definite as they could have been. *Valley Boys*, 947 N.W.2d at 868; *see City of Scottsbluff*, 809 N.W.2d at 740 ("In limited circumstances, the parties' failure to specify an essential term does not prevent the formation of a contract."); *Davco Realty*, 252 N.W.2d at 146 (stating that the terms of an agreement need not be ascertainable with "[a]bsolute certainty" to be valid).

The contractors' chief problem in this case is evidentiary. Whether they made binding oral arrangements with the insured homeowners is a question of fact. *See Ralston Inv. Grp., Inc. v. Wenck*, 933 N.W.2d 903, 910 (Neb. Ct. App. 2019). Whether the parties intended to contract in the first place is also a question of fact. *See City of Scottsbluff*, 809 N.W.2d at 740. Because the district court properly struck the contractors' exhibits, there is almost nothing in the summary judgment record about what they discussed with the homeowners, whether there was a meeting of the minds, and what the homeowners understood as the terms of their respective assignments.[3] *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Without that vital evidence, the assignments are too indefinite to be enforceable. *See Valley Boys*, 947 N.W.2d at 869.[4]

---

[3]The contractors do invoke State Farm's exhibits that summarize statements that the contractors made to homeowners about the assignment. These statements do not create an enforceable assignment of rights under Nebraska law because they do not make the scope of work reasonably definite. *See Valley Boys*, 947 N.W.2d at 868. For example, as to the scope of work, Elite's representatives tell homeowners that it will "complete all the storm damage related work," which is insufficient under Nebraska law. *See id.*

[4]R.A.D., Elite's assignee, thus cannot pursue a claim against State Farm for breach of contract. *See Valley Boys*, 947 N.W.2d at 865 ("The assignee of a chose in action acquires no greater rights than those of the assignor. . . .").

-10-

The contractors failed to meet their summary judgment burden to establish a genuine dispute of material fact whether their assignments with the homeowners were sufficiently "definite and certain as to the[ir] terms and requirements" to be enforceable. [5] *Id.* at 867. State Farm is entitled to summary judgment.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[5]This court therefore need not address the contractors' claim that the district court erred in not ruling on the admissibility of evidence from two of State Farm's witnesses about its estimates and payments.