FIRST-CITIZENS BANK & TRUST COMPANY, Plaintiff-Appellant v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant-Appellee

No. 933SC174

(Filed 1 March 1994)

**Insurance § 877 (NCI4th)— theft of auto from dealer's lot— assignment of insurance—assignment valid**

The trial court correctly granted summary judgment for defendant in an action to enforce the terms of an insurance policy where a repossessed automobile was stolen off the lot of Sigmon Chevrolet; plaintiff had financed the purchase of the automobile; Sigmon Chevrolet executed a contract after the theft which assigned to plaintiff all its rights in the insurance policy relating to the loss; and defendant refused payment, contending that the assignment was invalid under the terms of the insurance policy. The assignment of the mere right to payment after loss in no way broadened the scope of the coverage of insurable risks provided by the policy. It was noted that this disposition turns on the express words chosen by the defendant-insurer in this policy.

**Am Jur 2d, Insurance §§ 497 et seq.**

**FIRST-CITIZENS BANK & TR. CO. v. UNIVERSAL UNDERWRITERS INS. CO.**

[113 N.C. App. 792 (1994)]

Appeal by plaintiff from order entered 14 December 1992 by Judge G.K. Butterfield in Pitt County Superior Court. Heard in the Court of Appeals 6 December 1993.

On 16 April 1992, plaintiff filed a complaint seeking to enforce the terms of an insurance policy issued by defendant to Sigmon Chevrolet Buick Pontiac GMC Truck, Inc. (hereinafter "Sigmon Chevrolet"). Plaintiff sought recovery of the replacement value of a repossessed motor vehicle stolen from the premises of Sigmon Chevrolet. By an amended answer filed 22 July 1992, defendant *inter alia* admitted that the truck had been repossessed, denied that plaintiff had a contractual right to recover any proceeds under the terms of the insurance policy, and demanded a trial by jury.

The facts pertinent to this appeal are as follows: on 24 January 1990, Sigmon Chevrolet sold a 1987 S-10 Chevrolet Blazer to Kathryn S. Comfort. Plaintiff financed the purchase and subsequently perfected its security interest in the vehicle. Ms. Comfort defaulted under the terms of the note. On 20 February 1991, plaintiff repossessed the truck and caused it to be placed on Sigmon Chevrolet's premises pursuant to a 2 November 1989 "Retail Protection Agreement for Motor Vehicle Dealers," executed between plaintiff and Sigmon Chevrolet, which provided that:

> 13. You [plaintiff] shall have the sole right to make collections on all contracts and we agree not to solicit or make any collections with respect to any contracts held by you except pursuant to your instructions. We [Sigmon Chevrolet] agree to hold any repossessions in trust for you . . . .

> 14. In the event of repossession and foreclosure sale of a motor vehicle with respect to which the sale proceeds exceed an amount which covers our expenses and satisfies our repurchase obligation to you, we agree to reimburse you, to the extent of the balance of the sale proceeds remaining, for your reasonable costs of repossession, including the expense of recovering the vehicle . . . .

(Alterations added.)

Sometime prior to 3 May 1991, the truck was removed from Sigmon Chevrolet's premises by an unknown person or persons. On 3 May 1991, Mr. Don Sigmon, Sigmon Chevrolet's president, reported the truck as stolen to the police. Defendant contends that "[h]owever, Mr. Sigmon did not at that time or at any other

FIRST-CITIZENS BANK & TR. CO. v. UNIVERSAL UNDERWRITERS INS. CO.

[113 N.C. App. 792 (1994)]

time notify Universal Underwriters. In fact, Universal Underwriters did not learn of the theft until one month later, June 7, 1991, when they received a report from plaintiff's agent, Gaither Tadlock." Plaintiff contends that "Mr. Sigmon engaged in discussions with a claims representative of defendant a short time after the loss." A letter from defendant's claims examiner dated 4 September 1991 (in which defendant refused "voluntary payments" to plaintiff under Sigmon Chevrolet's policy) indicates that "[a] short time later [after the truck was repossessed on 20 February 1991], Don Sigmon has [sic] advised our Adjuster Ray Warren that a bank representative called Mr. Sigmon and informed him that they would take the vehicle to Toyota East in Greenville in order to sell the vehicle at retail prices. Therefore, when the vehicle was discovered missing, there was no alarm as Mr. Don Sigmon felt the vehicle had been towed to Toyota East in Greenville by a representative of First Citizens Bank."

On 15 April 1992, Sigmon Chevrolet executed a contract assigning to plaintiff: (1) "[a]ll rights, title, and interest (both legal and equitable)" in Sigmon Chevrolet's insurance policy "with respect to any and all claims which Sigmon may possess as against Universal [defendant] pursuant to said policy for or relating to any loss which may be attributed to the theft and/or disappearance of the Chevrolet Blazer in the possession of Sigmon at the time of said theft and/or disappearance"; (2) "[a]ll causes of action (both legal and equitable) which Sigmon may have as against Universal in connection with the claim or claims at issue and/or arising out of the failure of Universal to pay for said loss pursuant to the terms of the insurance policy," and; (3) "[a]ll rights, title, and interest (both legal and equitable) of Sigmon in and to the aforementioned Chevrolet Blazer." Subsequently, plaintiff made a demand for payment under the terms of the insurance policy. Defendant refused payment, contending that the assignment was invalid under the terms of the insurance policy. Plaintiff filed suit against defendant on 16 April 1992. On 30 November 1992, plaintiff filed a motion for summary judgment pursuant to G.S. 1A-1, Rule 56. On 2 December 1992, defendant filed a motion for summary judgment pursuant to G.S. 1A-1, Rule 56. On 14 December 1992, the trial court denied plaintiff's motion and granted defendant's motion for summary judgment. Plaintiff appeals.

FIRST-CITIZENS BANK & TR. CO. v. UNIVERSAL UNDERWRITERS INS. CO.

[113 N.C. App. 792 (1994)]

*Ward and Smith, P.A., by Louise W. Flanagan, for plaintiff-appellant.*

*Wallace, Morris, Barwick & Rochelle, P.A., by Stuart L. Stroud, for defendant-appellee.*

EAGLES, Judge.

Plaintiff brings forward one assignment of error. After a careful consideration of the briefs and record, we reverse and remand.

Plaintiff argues that the trial court erred by granting summary judgment for defendant. We agree.

Under the section entitled "Unicover Coverage Part 300 Auto Inventory Physical Damage" of the policy issued by defendant to Sigmon Chevrolet, the following terms appeared:

"AUTO" means any type of land motor vehicle, (whether crated or not), trailer or semi-trailer, farm tractor or implement, each including its equipment and other equipment permanently attached to it. AUTO does not include hovercraft.

. . . .

"COVERED AUTO" means an AUTO (1) owned by or acquired by YOU or (2) not owned by YOU but in YOUR care, custody, or control.

In a request for admissions, defendant admitted "that as of the time of delivery and acceptance of the subject motor vehicle to Don Sigmon by First Citizens, it adhered to the definition of a covered auto." In another request for admissions, defendant answered as follows:

No. 12 <u>Interrogatory</u>: Does the Unicover Coverage Part 300 Auto Inventory Physical Damage apply to and cover theft of the subject motor vehicle from the premises of Sigmon Chevrolet as the same is a "Covered Auto" "not owned by [Sigmon Chevrolet] but in [Sigmon Chevrolet's] care, custody or control"?

Answer: Without admitting that defendant has any obligation to pay hereunder, it is admitted the subject motor vehicle does come under the definition of a covered automobile, as defined in Unicover Coverage Part 300.

(Alterations in original.)

FIRST-CITIZENS BANK & TR. CO. v. UNIVERSAL UNDERWRITERS INS. CO.

[113 N.C. App. 792 (1994)]

Defendant argues that the 15 April 1992 "attempted assignment is invalid under the terms of the policy and plaintiff is only entitled to recovery from their contractual partner." We disagree. The provision regarding assignment of the insurance policy read as follows: "ASSIGNMENT—No assignment of interest will affect this policy unless WE [defendant] change the policy." The following provision also appears in the policy:

> Changes—The only way this policy can be changed is OUR issuing an endorsement(s) or substituting the declarations. They must be signed by one of OUR representatives when required by law. Nothing else will change this policy, waive any of its terms, or stop US from asserting any of OUR rights, not even notice to or knowledge learned by one of OUR representatives.

> If WE change any of the terms of this policy, which broadens or extends the coverage, this policy will automatically be broadened or extended as if it were actually endorsed, if the change

>> (a) was approved by YOUR state insurance regulatory authority, during the policy period or 45 days before the policy became effective; and

>> (b) is available to YOU without additional premiums.

Given defendant's admissions, *supra*, we conclude that the assignment of the mere right to payment after loss in no way broadened the scope of the coverage of insurable risks provided by defendant's policy. We particularly note that this policy did not expressly prohibit assignments: rather, our disposition here turns on the express words chosen by the defendant-insurer in this policy. *See Burk v. Prudential Ins. Co.*, 7 N.C. App. 209, 172 S.E.2d 67 (1970); *White v. Mote*, 270 N.C. 544, 155 S.E.2d 75 (1967). We note further that most of the cases from other jurisdictions regard such express prohibitions as generally ineffective when applied to assignments which occur after the loss has been incurred:

> [T]he great weight of authority supports the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply to assignments before loss only, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as

distinguished from a claim arising thereunder, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.

16 George J. Couch *et al.*, *Couch on Insurance 2d*, § 63.40, at 763-65 (Rev. ed. 1983) (footnotes omitted). *See also* 5A John A. Appleman and Jean Appleman, *Insurance Law and Practice*, § 3458, at 408-09 (1970).

For the reasons stated, the trial court's 14 December 1992 order is reversed and the cause is remanded for entry of an order granting partial summary judgment for plaintiff on the issue of liability. Accordingly, the cause is remanded for further proceedings, including a determination of the amount of damages, not inconsistent with this opinion.

Reversed and remanded.

Chief Judge ARNOLD and Judge WELLS concur.