Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/30/2016 09:10 AM CST

- 419 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

Millard Gutter Company, a corporation, doing business
as Millard Roofing and Gutter, appellee, v.
Farm Bureau Property & Casualty
Insurance Company, appellant.

___ N.W.2d ___

Filed December 30, 2016.    No. S-15-912.

1. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.

2. **Courts: Appeal and Error.** The district court and higher appellate courts generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. ____: ____. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.

5. **Insurance: Contracts.** As a general principle, a clause in an insurance policy restricting assignment does not in any way limit the policyholder's power to make an assignment of the rights under the policy—consisting of the right to receive the proceeds of the policy—after a loss has occurred.

6. **Insurance: Contracts: Parties.** Parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute.

7. **Statutes: Legislature: Public Policy.** It is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of the state.

- 420 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

8. **Insurance: Contracts: Damages.** In the absence of a statute to the contrary, a postloss assignment of a claim under a homeowner's insurance policy for the homeowner's property damage casualty loss is valid, despite a nonassignment clause.

Appeal from the District Court for Douglas County, SHELLY R. STRATMAN, Judge, on appeal thereto from the County Court for Douglas County, JOHN E. HUBER, Judge. Judgment of District Court affirmed.

Michael T. Gibbons and Aimee C. Bataillon, of Woodke & Gibbons, P.C., L.L.O., for appellant.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

CASSEL, J.

## INTRODUCTION

A homeowner's insurance policy prohibited an assignment of "[a]ll rights and duties" without the insurer's consent. Nonetheless, after a storm damaged the homeowner's roof, he assigned his claim to the company that repaired it. The company obtained a county court judgment, which the district court affirmed. This appeal followed. Because we conclude that a postloss assignment of a claim under a homeowner's insurance policy is valid despite the nonassignment clause, we affirm the decision of the district court.

## BACKGROUND

Farm Bureau Property & Casualty Insurance Company (Farm Bureau) issued a homeowner's insurance policy to Howard Hunter. The policy contained in part the following nonassignment clause:

**Change / Assignment of Interest**

A. All rights and duties under this policy may not be assigned without our written consent.

- 421 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

      B. No change of interest in this policy is effective unless we consent in writing.

During the policy coverage period, a storm damaged Hunter's home and he made a claim under his insurance policy.

Hunter retained Millard Gutter Company, a corporation doing business as Millard Roofing and Gutter (Millard Gutter), to repair the damage to his roof. Millard Gutter believed that the entire roof required replacement, and its estimate showed the cost of repairs to be $8,854.35. Farm Bureau opined that only two slopes of the roof needed to be replaced, and it computed the cost of those repairs to be $3,022.43. Millard Gutter ultimately replaced Hunter's entire roof.

At some point after the loss, Hunter signed an "Assignment of Claim" presented by Millard Gutter. According to the document, Hunter assigned to Millard Gutter "any and all claims or moneys due or to become due" to Hunter under his insurance policy for damages to Hunter's property. There is no evidence that Hunter obtained Farm Bureau's written consent prior to executing the assignment. Farm Bureau received a copy of Hunter's assignment and issued a check for $3,022.43 directly to Millard Gutter.

Millard Gutter sued Farm Bureau, seeking judgment against Farm Bureau of at least $5,252.66. Millard Gutter alleged that Farm Bureau was obligated under its policy with Hunter to pay the fair and reasonable value of Millard Gutter's services. Farm Bureau set forth a number of affirmative defenses. It alleged that the complaint failed to state a cause of action upon which relief could be granted for three reasons: (1) Farm Bureau did not consent to the alleged assignment, (2) Millard Gutter was not the real party in interest, and (3) Millard Gutter lacked privity of contract with Farm Bureau. Farm Bureau also claimed that the county court lacked subject matter jurisdiction.

Following a bench trial, the county court found in favor of Millard Gutter in the amount of $5,252.66. The county court later awarded Millard Gutter $11,668.34 in attorney fees.

Farm Bureau appealed to the district court, which affirmed the judgment of the county court. Farm Bureau took a further appeal, and we granted Millard Gutter's petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

Farm Bureau assigns that the district court erred in affirming the county court's exercise of subject matter jurisdiction, because the purported assignment of rights by Hunter to Millard Gutter was invalid and Millard Gutter lacked privity of contract with Farm Bureau.

## STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[1]

[2-4] The district court and higher appellate courts generally review appeals from the county court for error appearing on the record.[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3] In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.[4]

## ANALYSIS

### JURISDICTIONAL ARGUMENT DEPENDS
### UPON ASSIGNMENT'S VALIDITY

Farm Bureau raises a jurisdictional argument that turns upon the assignment to Millard Gutter. Farm Bureau argues

---

[1] *Al-Ameen v. Frakes*, 293 Neb. 248, 876 N.W.2d 635 (2016).

[2] *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015).

[3] *Id.*

[4] *Id.*

- 423 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

that Millard Gutter lacked standing to sue and that thus, the county court lacked subject matter jurisdiction over the action. Millard Gutter brought its breach of contract action against Farm Bureau as the assignee of Hunter's insurance claim, and a statute provides that "[t]he assignee of a thing in action may maintain an action thereon in the assignee's own name and behalf . . . ."[5] Whether Millard Gutter had standing depends on the validity of the assignment.

Farm Bureau's argument is grounded on contract and is quite simple. The policy provided that "[a]ll rights and duties under this policy may not be assigned without our written consent" and that without such consent, "[n]o change of interest in this policy is effective . . . ." Thus, Farm Bureau asserts that Hunter's assignment to Millard Gutter was invalid because Farm Bureau did not consent to it.

But courts have often upheld assignments despite a nonassignment provision. The three theories typically used for upholding such an assignment are:

> (1) The parties did not intend the nonassignment provision to apply to rights to receive payments, but only to the duties under the personal contract; (2) The reason for the prohibition ceased because the insurer's risks and liabilities under the contract became fixed when the insured event occurred; and (3) The public policy supported free alienability of a chose in action.[6]

At least after a loss has occurred, an indemnity contract of insurance is a chose in action because it confers a right to bring a legal action to recover a sum of money from or out of the contract.[7]

---

[5] Neb. Rev. Stat. § 25-302 (Reissue 2016).

[6] See *OB-GYN v. Blue Cross*, 219 Neb. 199, 205, 361 N.W.2d 550, 554 (1985).

[7] See 17 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 49:119 (4th ed. 2015).

- 424 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

Nonassignment Clause Jurisprudence
in Nebraska

Over a century ago, we were faced with an assignment of a claim in light of a contractual provision prohibiting an assignment in the context of a fire insurance policy. In *Star Union Lumber Co. v. Finney*,[8] after a loss caused by fire, the party who obtained insurance assigned the policy to an entity who held a mechanic's lien on the property. Each policy stated that if the policy was assigned without written consent, the policy should be void. In upholding the assignment of the claim, we stated: "It is claimed that a policy could not be assigned without the assent of the company. However this may be as to a policy before a loss occurs, the objection does not apply as to the assignment of a claim for a loss after it occurs."[9]

More recently, we addressed the issue with reference to a health insurance contract. In *OB-GYN v. Blue Cross*,[10] an insurer's contract with its subscribers provided that benefits payable to subscribers may not be assigned by the subscribers. One nonparticipating provider, in an effort to collect payment directly from the insurer for services it provided to subscribers, took assignments of the subscribers' benefits and submitted them to the insurer for payment. The insurer, relying on the nonassignment clause, refused to pay the nonparticipating provider directly and instead sent the payment to the subscribers. We upheld the nonassignment provision, determining that it was not void as a matter of public policy.

In *OB-GYN*, we discussed—but did not overrule—our decision in *Star Union Lumber Co*. Initially, we appeared to minimize its holding:

> The *Star Union* opinion deals with the nonassignment issue in two sentences . . . and gives no reasoning for such a holding. The *Star Union* case has never been cited

---

[8] *Star Union Lumber Co. v. Finney*, 35 Neb. 214, 52 N.W. 1113 (1892).

[9] *Id.* at 223, 52 N.W. at 1116.

[10] *OB-GYN v. Blue Cross, supra* note 6.

- 425 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

in Nebraska on the nonassignment point. How this fleet-
ing reference in 1892 regarding a fire insurance policy
sets out the public policy of Nebraska in 1982 with regard
to a medical insurance policy is not argued.[11]
But we also distinguished the insurance contract in *Star Union
Lumber Co.* from that in *OB-GYN*:

> [R]eading *Star Union* and [an Eighth Circuit case] in light
> of the public policy and equity questions before those
> courts, it is important to distinguish the insurance con-
> tracts in those cases from that of [the insurer] in another
> way. Both the insurance contracts in *Star Union* and [the
> Eighth Circuit case] required the avoidance of the entire
> contract on assignment. The [insurer's] contract does
> not avoid payment on assignment, it simply claims the
> contracted right to pay the subscriber with whom it con-
> tracted. Many contracts commentators have recognized
> the negative weight of an avoidance penalty in the public
> policy balance; that weight is not present here.[12]

In this respect, the contractual provision in the instant case is
more akin to that in *OB-GYN*—it did not void the policy, but
would invalidate an insured's purported transfer of payment to
an unauthorized assignee.

Our other nonassignment clause cases did not involve
insurance policies. In several cases involving the sale of land,
we stated that a contractual provision requiring a seller's con-
sent to any assignment was intended to safeguard performance
and that the provision was not enforceable when security for
the seller was not an issue, such as when performance was
rendered or was being tendered.[13] But we have also held that

---

[11] *Id.* at 205, 361 N.W.2d at 554.

[12] *Id.* at 205-06, 361 N.W.2d at 555.

[13] See, *Obermeier v. Bennett*, 230 Neb. 184, 430 N.W.2d 524 (1988);
*Panwitz v. Miller Farm-Home Oil Service*, 228 Neb. 220, 422 N.W.2d 63
(1988); *Riffey v. Schulke*, 193 Neb. 317, 227 N.W.2d 4 (1975); *Wagner v.
Cheney*, 16 Neb. 202, 20 N.W. 222 (1884).

an assignment by a lessee of an interest in a lease which prohibits such assignment without the lessor's consent is ineffective without such consent.[14] And in a case involving an action to recover professional fees relating to several construction projects, we determined that the nonassignment clause did not bar the assignment of the claims, because the assignment occurred after the contracts were breached.[15] We reasoned that "the intent of the provision against assignment of rights under a contract, which generally is to allow the parties to choose with whom they contract, is not affected by allowing an assignment of a right to collect damages for breach of contract."[16]

A Nebraska federal court recently considered a similar issue as that now before us.[17] In that case, a roofing contractor took assignments from numerous homeowners but the insurer refused to recognize the assignments or to pay the contractor. After the contractor sued, the insurer moved to dismiss and presented evidence that the homeowners' policies each stated that "'[a]ssignment of this policy shall not be valid except with the written consent of [the insurer].'"[18] The court observed that the homeowner's insurance policy at issue and the fire insurance policy in *Star Union Lumber Co.* both prohibited the assignment of the *policy*, which was not comparable to the clause in *OB-GYN*, which prohibited assignment of *amounts payable*. The federal court determined that assignments received by the contractor from the homeowners

---

[14] See, *American Community Stores Corp. v. Newman*, 232 Neb. 434, 441 N.W.2d 154 (1989); *Moritz v. S & H Shopping Centers, Inc.*, 197 Neb. 206, 247 N.W.2d 454 (1976).

[15] See *Folgers Architects v. Kerns*, 262 Neb. 530, 633 N.W.2d 114 (2001).

[16] *Id.* at 547, 633 N.W.2d at 126.

[17] See *Valley Boys, Inc. v. Allstate Ins. Co.*, 66 F. Supp. 3d 1179 (D. Neb. 2014).

[18] *Id.* at 1181.

- 427 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

were limited to "'claims made'"[19] by the insureds and that the nonassignment clause would not prohibit the contractor from recovering benefits due and owing to the insureds under the policies.

## Enforceability of Nonassignment Clauses in Other Jurisdictions

[5] The majority of courts follow the rule that clauses in insurance policies prohibiting assignments do not prevent an assignment after the loss has occurred. The rule has been applied to property insurance policies[20] and fire insurance policies.[21] Courts have applied the rule to various types of automobile insurance policies.[22] The rule has been applied to many types of liability insurance policies, including pollution liability insurance,[23] directors and officers liability

---

[19] *Id.* at 1182.

[20] See, *Edgewood Manor Apartment Homes v. RSUI Indem. Co.*, 782 F. Supp. 2d 716 (E.D. Wis. 2011) (applying Mississippi law); *U.S. v. Lititz Mut. Ins. Co.*, 694 F. Supp. 159 (M.D.N.C. 1988); *Conrad Brothers v. John Deere Ins. Co.*, 640 N.W.2d 231 (Iowa 2001).

[21] See, *Alabama Farm Bureau Insurance Co. v. McCurry*, 336 So. 2d 1109 (Ala. 1976); *Georgia Fire Asso. v. Borchardt*, 123 Ga. 181, 51 S.E. 429 (1905); *Roger Williams Ins. Co. v. Carrington*, 43 Mich. 252, 5 N.W. 303 (1880); *Ardon Constr. Corp. v. Firemen's Ins. Co.*, 16 Misc. 2d 483, 185 N.Y.S.2d 723 (1959); *Aetna Ins. Co. v. Aston*, 123 Va. 327, 96 S.E. 772 (1918); *Smith v. Buege*, 182 W. Va. 204, 387 S.E.2d 109 (1989); *Gimbels Midwest v. Northwestern Nat. Ins. Co.*, 72 Wis. 2d 84, 240 N.W.2d 140 (1976).

[22] See, *Giglio v. American Economy Ins. Co.*, No. CV020282069, 2005 WL 1155148 (Conn. Super. Apr. 26, 2005) (unpublished opinion); *Santiago v. Safeway Ins. Co.*, 196 Ga. App. 480, 396 S.E.2d 506 (1990); *Ginsburg v. Bull Dog Auto Fire Ins. Ass'n*, 328 Ill. 571, 160 N.E. 145 (1928); *Bolz v. State Farm Mut. Auto. Ins. Co.*, 274 Kan. 420, 52 P.3d 898 (2002); *First-Citizens Bank & Tr. Co. v. Universal Underwriters Ins. Co.*, 113 N.C. App. 792, 440 S.E.2d 304 (1994).

[23] See *R.L. Vallee v. American Intern. Specialty Lines*, 431 F. Supp. 2d 428 (D. Vt. 2006).

- 428 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

insurance,[24] excess and umbrella liability insurance,[25] employer's liability insurance,[26] comprehensive general liability insurance,[27] and other variations of liability or indemnity insurance.[28] The rule has been applied to builder's risk insurance.[29] It has been applied to industrial life insurance[30] and annuities issued pursuant to a structured settlement agreement.[31] And, most significantly, it has been applied to homeowners insurance policies.[32]

---

[24] See *Straz v. Kansas Bankers Sur. Co.*, 986 F. Supp. 563 (E.D. Wis. 1997).

[25] See, *Viola v. Fireman's Fund Ins. Co.*, 965 F. Supp. 654 (E.D. Penn. 1997); *Egger v. Gulf Ins. Co.*, 588 Pa. 287, 903 A.2d 1219 (2006); *In re Ambassador Ins. Co., Inc.*, 184 Vt. 408, 965 A.2d 486 (2008); *PUD 1 v. International Insurance Co.*, 124 Wash. 2d 789, 881 P.2d 1020 (1994).

[26] See, *Southwestern Bell Tel. Co. v. Ocean Acc. & Guar. Corp.*, 22 F. Supp. 686 (W.D. Mo. 1938); *Garetson-Greason L. Co. v. Home L. & A. Co.*, 131 Ark. 525, 199 S.W. 547 (1917).

[27] See, *Gopher Oil v. American Hardware*, 588 N.W.2d 756 (Minn. App. 1999); *Elat, Inc. v. Aetna Cas. and Sur. Co.*, 280 N.J. Super. 62, 654 A.2d 503 (1995).

[28] See, *Aetna Casualty & Surety Co. v. Valley National Bank*, 15 Ariz. App. 13, 485 P.2d 837 (1971); *Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76 (Del. Ch. 2009) (applying New York law); *Illinois Tool Works, Inc. v. Commerce & Industry Insurance Co.*, 2011 IL App (1st) 093084, 962 N.E.2d 1042, 357 Ill. Dec. 141 (2011); *Pilkington N. Am. v. Travelers Cas. & Sur.*, 112 Ohio St. 3d 482, 861 N.E.2d 121 (2006).

[29] See *Wehr Constructors v. Assurance Co. of Am*, 384 S.W.3d 680 (Ky. 2012).

[30] See *Magers v. National Life & Accident Insurance Co.*, 329 S.W.2d 752 (Mo. 1959).

[31] See *Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 757 A.2d 526 (2000).

[32] See, *Security First v. Office of Ins. Regulation*, 177 So. 3d 627 (Fla. App. 2015); *Manley v. Automobile Ins. Co. of Hartford*, 169 S.W.3d 207 (Tenn. App. 2005).

- 429 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

Treatises and other authoritative texts also support the rule.[33] The reason for the rule with respect to insurance policies has been explained as follows:

> Antiassignment clauses in insurance policies are strictly enforced against attempted transfers of the policy itself before a loss has occurred, because this type of assignment involves a transfer of the contractual relationship and, in most cases, would materially increase the risk to the insurer. Policy provisions that require the company's consent for an assignment of rights are generally enforceable only before a loss occurs, however. As a general principle, a clause restricting assignment does not in any way limit the policyholder's power to make an assignment of the rights under the policy—consisting of the right to receive the proceeds of the policy—after a loss has occurred. *The reasoning here is that once a loss occurs, an assignment of the policyholder's rights regarding that loss in no way materially increases the risk to the insurer. After a loss occurs, the indemnity policy is no longer an executory contract of insurance. It is now a vested claim against the insurer and can be freely assigned or sold like any other chose in action or piece of property.*[34]

Some states have a statute which weighs on the outcome. A Louisiana law declares that "[a] right cannot be assigned when the contract from which it arises prohibits the assignment of that right."[35] In applying that law, the Supreme Court of

---

[33] See, 5A John Alan Appleman & Jean Appleman, Insurance Law & Practice § 3458 (1970 & Cum. Supp. 2009); Robert E. Keeton & Alan I. Widiss, Insurance Law § 4.1 (1988); 17 Lord, *supra* note 7, § 49:126; 3 Steven Plitt et al., Couch on Insurance 3d § 35:8 (2011); 44 Am Jur. 2d *Insurance* §§ 776 to 778 (2013).

[34] 17 Lord, *supra* note 7, § 49:126 at 130-32 (emphasis supplied).

[35] La. Civ. Code Ann. art. 2653 (2008).

- 430 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

Louisiana determined: "There is no public policy in Louisiana which precludes an anti-assignment clause from applying to post-loss assignments. However, the language of the anti-assignment clause must clearly and unambiguously express that it applies to post-loss assignments."[36] A California statute "bars an insurer, 'after a loss has happened,' from refusing to honor an insured's assignment of the right to invoke the insurance policy's coverage for such a loss."[37] Numerous states have a statute providing that a policy may be assignable or not assignable, as provided by its terms.[38] But even the existence of such a statute has not automatically resulted in the unenforceability of an assignment when the assignment occurred after the loss.[39]

## Public Policy

[6] This case presents two important but competing policies: the right to freedom of contract versus the free assignment of a chose in action. Parties to an insurance contract may

---

[36] *In re Katrina Canal Breaches Litigation*, 63 So. 3d 955, 964 (La. 2011).

[37] *Fluor Corp. v. Superior Court*, 61 Cal. 4th 1175, 1180, 354 P.3d 302, 303, 191 Cal. Rptr. 3d 498, 501 (2015), quoting Cal. Ins. Code § 520 (West 2013).

[38] See, Ala. Code § 27-14-21(a) (2014); Alaska Stat. § 21.42.270 (2004); Ariz. Rev. Stat. Ann. § 20-1122 (2002); Ark. Code Ann. § 23-79-124(a) (2004); Del. Code Ann. tit. 18, § 2720 (1999); Fla. Stat. Ann. § 627.422 (West 2016); Ga. Code Ann. § 33-24-17 (2005); Haw. Rev. Stat. § 431:10-228(a) (2005); Idaho Code § 41-1826 (2003); Ky. Rev. Stat. Ann. § 304.14-250(1) (LexisNexis 2011); Me. Rev. Stat. Ann. tit. 24-A, § 2420(1) (2000); Mont. Code Ann. § 33-15-414(1) (2007); N.J. Stat. Ann. § 17B:24-4 (West 2006); Okla. Stat. Ann. tit. 36, § 3624 (West 2011); Or. Rev. Stat. § 743.043 (2007); S.D. Codified Laws § 58-11-36 (2004); Vt. Stat. Ann. tit. 8, § 3713(a) (2015); Wyo. Stat. Ann. § 26-15-122 (2013).

[39] See, e.g., *Lexington Ins. v. Simkins Industries*, 704 So. 2d 1384 (Fla. 1998); *Santiago v. Safeway Ins. Co., supra* note 22; *Wehr Constructors v. Assurance Co. of Am, supra* note 29 (distinguishing between assignment of policy and assignment of ripened claim and finding clause void as against public policy).

contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute.[40] "While [the policy favoring free alienability of a chose in action] is significant and may reflect a public policy, it is not paramount and must be balanced against a very strong policy . . . favoring the freedom to contract."[41] But in some situations, contractual provisions may be void as against public policy.[42] Our resolution turns on whether invalidating a postloss assignment of insurance proceeds would be contrary to public policy.

[7] It is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of the state.[43] But we have found no statute concerning the enforceability of a nonassignment clause in a property insurance policy when the assignment is made after the loss has been sustained. Farm Bureau does not contend that the breach-of-condition statute[44] supports its position. And the absence of such a statute bears mentioning in light of our decisions, recounted above, which have upheld postloss assignments despite a nonassignment clause.

Public policy may favor enforcement of a nonassignment clause in some situations. In *OB-GYN*, evidence established that the nonassignment clause was "a valuable tool in persuading health care providers to participate in its physician's voluntary cost effectiveness program and accept set fees for health

---

[40] *Mefferd v. Sieler & Co.*, 267 Neb. 532, 676 N.W.2d 22 (2004).

[41] *OB-GYN v. Blue Cross, supra* note 6, 219 Neb. at 206, 361 N.W.2d at 555.

[42] See, e.g., *Quinn v. Godfather's Investments*, 217 Neb. 441, 348 N.W.2d 893 (1984).

[43] *Manon v. Orr*, 289 Neb. 484, 856 N.W.2d 106 (2014).

[44] Neb. Rev. Stat. § 44-358 (Reissue 2010) ("breach of . . . condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss").

- 432 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
MILLARD GUTTER CO. v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 295 Neb. 419

services, keeping health care costs down and passing that savings on to its subscribers."[45] As the district court in the instant case noted, cases from other jurisdictions have similarly carved out an exception to the majority rule in cases involving health care insurance contracts where the purpose of the clause was to control health care costs.[46]

The record in this case contains no similar justification for the nonassignment clause. Farm Bureau presented no evidence to show why it inserted the nonassignment clause in its policy or to otherwise support its enforcement when the assignment occurs after the loss. Nor has Farm Bureau pointed to any specific risk or burden that it may face as a result of the assignment. The record simply does not demonstrate any increased risk to Farm Bureau or other adverse consequence of the assignment (other than this litigation, of course). On the other hand, the record contains evidence that in the roofing and gutter repair industry, it is customary for a homeowner to make an assignment of his or her right to proceeds from an insurance company to the contractor and for the insurer to make direct payment to the contractor. We understand that an insurer may wish to deal only with the person with whom it had reached a contract, but that does not outweigh the policy favoring free assignability of a chose in action. We further note that we are not confronted with a direct contradiction of explicit contractual language, i.e., Farm Bureau's policy did not expressly prohibit assignment of a postloss claim.

We recognize that the Legislature is best suited to make public policy determinations. In the context of a fire insurance policy, our precedent allowed postloss assignments despite the

---

[45] *OB-GYN v. Blue Cross, supra* note 6, 219 Neb. at 207, 361 N.W.2d at 556.

[46] See, e.g., *Kent General Hospital v. Blue Cross, Etc.*, 442 A.2d 1368 (Del. 1982); *Abraham K. Kohl, D.C. v. Blue Cross*, 955 So. 2d 1140 (Fla. App. 2007); *Augusta Medical Complex, Inc. v. Blue Cross*, 230 Kan. 361, 634 P.2d 1123 (1981); *Somerset Ortho. v. Horizon BC & BS*, 345 N.J. Super. 410, 785 A.2d 457 (2001).

presence of a nonassignment clause in the contract. Regarding a health insurance policy, other public policy considerations dictated a different result. The Legislature has not acted to affect either result. Here, the claim for storm damage under a homeowner's insurance policy seems comparable to our fire loss precedent and distinguishable from the health claims case. If postloss assignments of storm damage claims are having a deleterious effect on insurers, they should present their concerns to the Legislature.

[8] We conclude that in the absence of a statute to the contrary, a postloss assignment of a claim under a homeowner's insurance policy for the homeowner's property damage casualty loss is valid, despite a nonassignment clause. Because the assignment in this case was valid, Millard Gutter had standing to bring its breach of contract claim and the county court did not lack subject matter jurisdiction over the action.

## CONCLUSION

Under the circumstances of this case, we conclude that the postloss assignment of a claim under a homeowner's insurance policy was valid even though the policy stated any assignment made without the insurer's consent would be invalid. In Millard Gutter's brief, it requests an award of further attorney fees for services on appeal. Because we have found in Millard Gutter's favor, it will be awarded attorney fees in connection with this appeal upon a proper and timely application.[47]

AFFIRMED.

---

[47] See Neb. Ct. R. App. P. § 2-109(F) (rev. 2014).