IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BEL FURY INVESTMENTS GROUP V. GONZALEZ


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


BEL FURY INVESTMENTS GROUP, L.L.C., A NEBRASKA
LIMITED LIABILITY COMPANY, APPELLANT,

V.

KIM M. GONZALEZ, APPELLEE.


Filed January 7, 2020.    No. A-19-162.


Appeal from the District Court for Douglas County, GREGORY M. SCHATZ, Judge, on appeal thereto from the County Court for Douglas County, SHERYL L. LOHAUS, Judge. Judgment of District Court affirmed in part, and in part reversed, and cause remanded with directions.

Justin D. Eichmann, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellant.

Caitlin C. Cedfeldt, of Legal Aid of Nebraska, for appellee.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Bel Fury Investments Group, L.L.C. (Bel Fury), appeals from the order of the district court for Douglas County affirming the county court's determination that appellee, Kim M. Gonzalez, was not required to pay 2 months additional rent and a cancellation fee based on her alleged breach of a lease between the parties. Bel Fury argues that the county court erred in not enforcing the notice provisions of the parties' rental agreement. As such, Bel Fury contends that Gonzalez should have been required to pay additional rent, pet fees, and a cancellation fee beyond the damages awarded. Because we conclude that Gonzalez did not provide sufficient notice of her intention to

- 1 -

terminate the lease and that Bel Fury was therefore entitled to the award of the cancellation fee, we affirm in part, reverse in part, and remand the cause with directions.

BACKGROUND

On December 29, 2017, Bel Fury filed a complaint in the county court against Gonzalez, alleging that she owed Bel Fury for past due rent, contractual fees, and repair fees incurred during her tenancy in a single-family dwelling it owned. Bel Fury alleged in its complaint that Gonzalez owed it a total of $1,834.57, which was itemized as follows:

1. Tripped breaker call--$71.50
2. Prorated September rent for first 5 days--$131.67
3. September late fee--$75.00
4. Cancellation fee--$948.00
5. Carpet cleaning--$130.00
6. Repairs and materials--$276.90
7. Move out clean--$39.00
8. Gutter clean--$65.00
9. Yard clean and haul--$97.50

On January 26, 2018, Gonzalez filed an answer and counterclaim, alleging that she had not damaged the residential property beyond ordinary wear and tear and that she did not owe past due rent, contractual fees, or repair fees. Her counterclaim alleged that Bel Fury owed her the refund of her security deposit in the amount of $775. Bel Fury filed a reply to the counterclaim on January 29, denying Gonzalez' allegations.

Trial was held in the county court on August 10, 2018. Scott Bloemer, Bel Fury's managing member, testified that Bel Fury leased a single-family residence to Gonzalez beginning on January 1, 2016, as outlined in a rental agreement signed by both parties. The agreement specified an initial term of 1 year with a security deposit of $775, monthly rent of $775, and monthly pet charge of $25 for Gonzalez' dog. The agreement further specified Gonzalez would owe a $75 late fee if she did not pay rent within 2 days after it became due on the first of each month.

The agreement outlined specific procedures regarding expiration and termination of the lease:

23. Extension of Term: Unless at least a two-month notice, in writing, be given by Tenant to Landlord, or a one-month notice by Landlord to Tenant previous to lease expiration, of an intention to terminate said lease at the end of its term, the lease shall be extended for an additional period of **six months**. Unless a one-month notice of intention to terminate at the end of such extension be given by one of the parties, the lease shall be further extended for **six-month period** to **six-month period** thereafter, until either party furnishes the other at least a one-month notice of intention to terminate, prior to the end of any extension.

A two-month notice is defined as two full calendar months, running from the first day of the month one; and, ending on the last day of month two. A one-month notice is defined as one full calendar month, running from the first day of said month; and, ending

on the last of that month. No termination notice shall become effective until the first day of a calendar month.

. . . .

25. Early Cancellation: If termination occurs before the original lease period expires, a two-month notice must be given to Landlord; plus, Tenant agrees to forfeit all security deposits; and, pay a cancellation fee equal to 10% of the total annual rental agreement value, which is **$930.00 (NINE HUNDRED THIRTY DOLLARS AND NO CENTS).**

If termination occurs before the conclusion of any lease extension term, a two-month notice must be given to Landlord; plus, tenant agrees to forfeit all security deposits; and, pay a cancellation fee equal to 10% of the total annual rental agreement value (to be determined at time of cancellation).

A two-month notice is defined as two full calendar months, running from the first day of the month one; and, ending on the last day of month two. No early termination notice shall become effective until the first day of a calendar-month.

(Emphasis in original.) Regarding notices, paragraph 8 of the agreement specifies, "The rent and all notices to the Landlord from the Tenant shall be mailed to the Landlord" at its business address, P.O. Box 3747, Omaha, Nebraska 68103-0747.

Effective January 1, 2017, Gonzalez' rent increased from $775 per month to $790 per month. The parties agree that the lease automatically extended for 6 months beginning on January 1, 2017, as neither party notified the other of its intention to terminate.

Bloemer testified that all tenant communications were kept in Bel Fury's files. Keri Meyer, a general administrator for Bel Fury who handled property management, had regular contact with the tenants according to Bloemer, and she was responsible for documenting all those contacts, "regardless of how trivial."

Gonzalez testified that she gave notice at least 30 days before June 1, 2017, of her intent to vacate the property. Gonzalez specifically testified that she told Meyer of her intention in March 2017 and "gave [Meyer] an idea that [she] was looking for a home, waiting for it to close." Gonzalez acknowledged however that she "had no idea" whether the home she sought to purchase would close before June 2017. Gonzalez testified that she told Meyer in March that she would leave by September, which, to her, meant before rent was due on September 5. She said that she called and spoke with Meyer approximately 10 times between March and September 2017 when she moved out, continuously telling her that she was going to move out after June. After prompting by Meyer, Gonzalez provided a written notice of her intentions in a letter dated August 2, 2017. In her letter addressed "To whom it may concern," Gonzalez stated that she "will be vacating the premises . . . due to whenever [her] closing date goes thru." Gonzalez went on to say,

I also wanted to include that [Meyer] and I had a verbal notice even the last three months that I would be moving soon and she said I was on a 6 month lease after she raised the rent in January so in June I gave her a verbal that I would be leaving by September.

Gonzalez testified that she faxed the letter, which reflected a fax date of August 9. Gonzalez said that she received no response to her August 2 letter even though she requested that someone from Bel Fury walk through her residence to evaluate its cleanliness. Based on the notices that she had provided to Meyer, Gonzalez believed that she was on a month-to-month lease after June 2017.

Bloemer testified that Gonzalez' indication in the August 2 letter of when she would move out was "rather vague," and he emphasized that her reference to a previous conversation with Meyer was the only indication that she would move out in September. Bloemer further testified that because Gonzalez' letter gave no definitive date upon which she would vacate the property, it would be filed as correspondence from a tenant but not considered notice of her intention to vacate. Bloemer said that Bel Fury never received a written notice of termination or cancellation from Gonzalez that identified a specific date that she would vacate the property.

A note in Bel Fury's file signed by Meyer shows that Gonzalez turned in her key on September 5, 2017. Meyer wrote in that note that Gonzalez asked about her security deposit, which Meyer advised was forfeited because she was breaking the lease. According to Meyer's note and Bloemer's testimony, Gonzalez said that she did not have a forwarding address and was unsure whether she would close on the house she sought to purchase. Bloemer testified that Gonzalez paid rent through August 2017 but did not pay any rent related to September even though she lived there through September 5.

At trial, Bloemer specifically testified that Gonzalez owed Bel Fury a total of $2,476.52, which was more than what was outlined in its complaint. Bloemer itemized the damages sought at trial as follows:

1. Materials for window replacement--$110.02
2. Labor for window replacement--$100.00
3. Charge for tripped breaker--$55.00
4. Credit for security deposit paid--($775.00)
5. Rent for September 2017--$790.00
6. Pet charge for September 2017--$25.00
7. Late fee for unpaid September 2017 rent--$75.00
8. Cancellation fee (10% of total annual rental)--$948.00
9. Rent for October 2017--$790.00
10. Pet charge for October 2017--$25.00
11. Late fee for unpaid October 2017 rent--$75.00
12. Maintenance charge for limb/debris removal--$75.00
13. Maintenance charge for cleaning--$30.00
14. Maintenance charge for gutter cleaning--$53.50
15. Maintenance charge for carpet cleaning--$100.00

Notably, Bloemer testified that Bel Fury elected not to enforce the security deposit forfeiture provision in the lease and applied the security deposit that Gonzalez had paid as a credit against the damages.

Following trial, the county court entered a judgment in favor of Bel Fury and against Gonzalez for $605.19, plus court costs of $67.26. The county court allowed some, but not all, of

the claimed damages. Bel Fury did not appeal the findings of the county court with respect to damages to the property. The county court itemized its award as follows:

1. Window replacement materials--$110.02
2. Window replacement labor--$100.00
3. Tripped breaker--$55.00
4. September 2017 rent (9/1-5/17)--$131.67
5. September pet charge (9/1-5/17)--$5.00
6. September late fee--$75.00
7. Limb/debris removal--$75.00
8. Gutter cleaning--$53.00

The county court further determined that the security deposit made by Gonzalez should be applied to the judgment. Since the deposit exceeded the judgment, the court found that Bel Fury owed Gonzalez a net award of $102.55 on her counterclaim.

Bel Fury appealed the award to the district court. It filed a statement of errors on September 4, 2018, asserting that the county court erred in failing to accord the rental agreement its plain and ordinary meaning with respect to its termination and cancellation provisions, thus failing to award it 2 months' rent, pet charges, late fees, and a cancellation fee. The district court determined that the county court had relied on evidence of Gonzalez' intent to terminate the lease in March 2017 and that Bel Fury was therefore not entitled to 2 months' rent, pet charges, late fees, or a cancellation fee. The district court therefore affirmed the county court's order.

Bel Fury now appeals to our court.

## ASSIGNMENTS OF ERROR

Bel Fury assigns, restated, that the county court erred in not awarding damages based on the rental agreement's plain and ordinary meaning with respect to its notice provisions and in not awarding the payment of a cancellation fee upon early termination.

## STANDARD OF REVIEW

The district court and higher appellate courts generally review appeals from the county court for error appearing on the record. *Houser v. American Paving Asphalt*, 299 Neb. 1, 907 N.W.2d 16 (2018). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*, 295 Neb. 419, 889 N.W.2d 596 (2016).

## ANALYSIS

Bel Fury first argues that the lower courts erred in not attributing to the rental agreement its plain and ordinary meaning with respect to its notice provisions and that such error resulted in the courts' failure to award damages representing 2 months' rent, pet charges, and late fees.

Gonzalez argues in reply that the courts correctly found that she had provided notice to Bel Fury in accord with the rental agreement's terms. Based on our review, we determine that Gonzalez' notice was deficient but that Bel Fury nevertheless is not entitled to 2 months' rent, pet charges, or late fees.

On the issue of notice, Gonzalez contends, and the county and district courts agreed, that she gave sufficient notice to Bel Fury in March 2017 of her intention to terminate the lease. Gonzalez testified that she told Meyer in March 2017 that she was "looking for a home, waiting for it to close" and that she would leave by September. Additionally, in her letter dated August 2, 2017, Gonzalez referenced a conversation with Meyer in June during which she said she would be leaving by September.

Although the district court noted the appearance of some degree of ambiguity in the agreement's notice provisions, we find paragraph 8 of the rental agreement entirely unambiguous. Paragraph 8 clearly required Gonzalez to mail "all notices" to Bel Fury at its given address. Notably, paragraphs 23 and 25 require "notice, in writing" at times and, at other times, "notice" without specifying a medium--giving some credence by implication to Gonzalez' argument that her conversation with Meyer was notice even though it was not written. However, a court must consider a contract as a whole and, if possible, give effect to every part of the contract. *Citizens of Humanity v. Applied Underwriters*, 299 Neb. 545, 909 N.W.2d 614 (2018). This leads us to read paragraphs 8, 23, and 25 in conjunction with one another. Based on that reading of the rental agreement as a whole and giving effect to each of its parts, we determine that Gonzalez' so-called notices in March and August 2017 did not satisfy paragraph 8 of the rental agreement. Gonzalez therefore never provided sufficient notice of her intention to vacate the residence until she returned her key to Bel Fury on September 5, 2017.

As to potential recovery, we first note that Bel Fury does not seek in its complaint to recover damages for 2 months' rent, pet charges, or a late fee with respect to October 2017. Bel Fury's complaint only seeks damages related to rent from September 1 through 5, 2017, and a late fee with respect to September. Thus, while Gonzalez did not provide sufficient notice of her intention to terminate the lease until she returned her key on September 5, Bel Fury is not entitled to recover rent or pet charges beyond the first 5 days in September, or a late fee with respect to October. Bel Fury cannot be awarded more than what was prayed for in its complaint.

Bel Fury also argues that the lower courts erred in not awarding it damages in the amount of the cancellation fee provided for in paragraph 25 of the rental agreement. The parties agree that Gonzalez' initial lease term was for the year of 2016. Thereafter, by virtue of paragraph 23, the lease automatically extended for a 6-month period beginning on January 1, 2017. Both parties acknowledge that automatic extension. Paragraph 23 also provides that the lease will again automatically extend for another 6-month period unless one of the parties provides a 1-month notice of their intention to terminate the lease at the end of such extension. Because Gonzalez never provided sufficient notice of her intention to terminate the lease, it automatically renewed for a second 6-month period, running from July 1 through December 21, 2017.

Paragraph 25 of the rental agreement provides that a tenant must "pay a cancellation fee equal to 10% of the total annual rental agreement value (to be determined at time of cancellation)" if she terminates the lease before the conclusion of any lease extension term. Here, Gonzalez'

returning her key to Bel Fury on September 5, 2017, terminated the lease before the conclusion of the second lease extension term, and she was therefore obligated to pay a cancellation fee. The monthly rental rate at the time of Gonzalez' termination was $790, meaning the cancellation fee amounted to $948. We further note that Bel Fury did ask for the payment of the cancellation fee in its complaint. We therefore find that district court erred in affirming the county court's order which did not award the cancellation fee to Bel Fury. The order of the district court is affirmed in part, reversed in part, and the cause is remanded to the district court with directions to remand the matter to the county court with directions that it modify the award by awarding Bel Fury a cancellation fee of $948 per the terms of the parties' agreement. After being partially satisfied by the remainder of Gonzalez' refunded security deposit, $845.45 is due to Bel Fury.

CONCLUSION

The order of the district court is affirmed in part, reversed in part, and the cause is remanded to the district court with directions to remand the matter to the county court with directions that it modify the award by awarding Bel Fury a cancellation fee of $948 per the terms of the parties' agreement. After being partially satisfied by the remainder of Gonzalez' refunded security deposit, $845.45 is due to Bel Fury.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.